# CIELLE FINK BLOCK *v.* STATE OF MARYLAND

[No. 32, September Term, 1979.]

*Decided November 5, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Gary Howard Simpson,* with whom was *James W. Shook* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Robert Dean, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The issue in this criminal case is whether, under the circumstances set forth below, the retrial of the defendant would violate the prohibition against double jeopardy on the ground that the defendant had previously been acquitted of the same offense.

The defendant, Cielle Fink Block, on March 16, 1978, was tried in the District Court of Maryland, sitting in Montgomery County, on a single charge of shoplifting merchandise under the value of $100.00. At the conclusion of her trial on that date, the district judge rendered a verdict of guilty but deferred imposing a sentence. Eleven days later, the defendant filed a motion requesting that the trial judge reconsider the verdict. On April 14, 1978, the trial judge in open court stated that he had reconsidered the verdict in the defendant's case, and he then rendered a verdict of *not* guilty. The following month, the prosecuting attorney filed a motion asking the trial judge to set aside the not guilty verdict rendered on April 14, 1978, and reinstate the guilty verdict

rendered on March 16, 1978. On June 27, 1978, the trial judge struck his not guilty verdict but, instead of reinstating the prior guilty verdict, ordered that the defendant stand for a new trial.

The defendant then prayed a jury trial, thereby causing her case to be transferred to the Circuit Court for Montgomery County. *See* Maryland Code (1974, 1979 Cum. Supp.), § 4-302(d) of the Courts and Judicial Proceedings Article. In the circuit court, she filed a motion to bar the new trial on the ground of double jeopardy. After a hearing, the circuit court denied the motion, and the defendant took an immediate appeal to the Court of Special Appeals.[1]

Before any proceedings in the Court of Special Appeals, the defendant filed a petition for a writ of certiorari, which we granted. We now reverse, holding that a new trial of the defendant for the same offense would violate the double jeopardy prohibition.

In *Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974), this Court flatly held that when a trial judge "intentionally renders a verdict of 'not guilty,' the verdict is final and the defendant cannot later be retried on or found guilty of the same charge." 271 Md. at 706. We based this holding both upon the Maryland common law prohibition against double jeopardy (*id.* at 704-706) and upon the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to state proceedings by the Fourteenth Amendment (*id.* at 706). We pointed out in *Pugh* that from the earliest times, it has been settled that a verdict of not guilty "cannot be set aside. Any attempt to do so by the prosecutor is barred by what at common law was the plea of *autrefois acquit." Id.* at 705. It was held that this principle applied even though a final judgment was not entered in the case, *id.* at 706-707.

The State in the case at bar concedes that if the District Court had "jurisdiction" to enter the not guilty verdict on April 14, 1978, then, under the principles set forth in *Pugh v. State, supra,* a retrial would violate the prohibition against

---

1. The denial of a motion to preclude a trial on double jeopardy grounds is immediately appealable, Neal v. State, 272 Md. 323, 322 A.2d 887 (1974).

double jeopardy. However, the State maintains that the District Court on April 14, 1978, lacked jurisdiction to set aside the prior guilty verdict and render a verdict of not guilty. On the theory that the Court lacked jurisdiction, the State in effect asks us to treat the verdict of acquittal as a nullity.

The State's "lack of jurisdiction" argument is grounded upon two provisions of Maryland District Rule 770:

"a. *Motion of Defendant.*

"Upon motion of the defendant filed within three days after a verdict the court, in the interest of justice, may order a new trial.

\* \* \*

"c. *Revisory Power of Court.*

"For a period of 90 days after the imposition of a sentence, if no appeal has been perfected, or thereafter, pursuant to a motion filed within that period, the court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial. After the expiration of that period, the court has revisory power and control over the judgment only in case of fraud, mistake or irregularity."

The State points out that subsection a gives the district judge revisory authority over the verdict only for a three-day period, and that the not guilty verdict in this case was rendered twenty-nine days after the initial verdict of guilty. Turning to subsection c, the State contends that the District Court's ninety-day revisory power under that provision does not come into being until the imposition of the sentence, and in the instant case, the reconsideration and verdict of acquittal took place prior to the imposition of sentence. Alternatively, the State insists that even if subsection c were intended to give the District Court revisory authority during the entire period from the rendition of the verdict until ninety days after sentencing, including the period between the verdict and sentence, the rule does not authorize the court to

render a not guilty verdict. Instead, according to the State, the court's authority under subsections a and c is limited to granting a new trial. In sum, the State argues that because the verdict of acquittal was in violation of Rule 770, the District Court lacked jurisdiction, and that the acquittal did not result in a favorable termination of the defendant's jeopardy.

We shall assume, without deciding, that the State's interpretation of Maryland District Rule 770 is correct, and that the District Court's action on April 14, 1978, was in violation of the rule, either because it was untimely, or because the rule only authorizes a new trial, or for both of these reasons. Nevertheless, the violation of the rule does not permit us to ignore the acquittal on the "jurisdictional" theory advanced by the State.

The principle upon which the State's argument rests was set forth by the Supreme Court in *Grafton v. United States,* 206 U.S. 333, 345, 27 S.Ct. 749, 751, 51 L.Ed. 1084 (1907):

> "We assume as indisputable, on principle and authority, that before a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted *must have had jurisdiction* to try him for the offense charged." (Emphasis supplied.)

However, it is clear from *Grafton,* and from many other cases, that the "jurisdiction" of the court for purposes of this principle of double jeopardy law means jurisdiction in the most basic sense. It does not mean that an error in the exercise of jurisdiction permits judicial proceedings to be treated as a nullity. Thus, in *Grafton,* the Supreme Court reversed on double jeopardy grounds a homicide conviction in a civilian court because the defendant had previously been acquitted of the same homicide by a court-martial. After pointing out that court-martial proceedings are final " 'except for the purpose of ascertaining whether the military court had jurisdiction of the person and subject matter,' "

206 U.S. at 347, the Supreme Court went on (*id.* at 348, emphasis supplied):

> "We are now to inquire whether the court-martial in the Philippines had jurisdiction to try Grafton for the offenses charged against him. It is unnecessary to enter upon an extended discussion of that question; for, it is entirely clear that the court-martial had jurisdiction to try the accused upon the charges preferred against him. The 62d article of War, in express words, confers upon a general, or a regimental garrison, or field officers' court-martial, according to the nature and degree of the offense, jurisdiction to try 'all crimes' not capital, committed in time of peace by an officer or soldier of the Army. The crimes referred to in that article · manifestly embrace those not capital, committed by officers or soldiers of the Army in violation of public law as enforced by the civil power. No crimes committed by officers or soldiers of the Army are excepted by the above article from the jurisdiction thus conferred upon courts-martial, except those that are capital in their nature. While, however, the jurisdiction of general courts-martial extends to all crimes, not capital, committed against public law by an officer or soldier of the Army within the limits of the territory in which he is serving, this jurisdiction is not exclusive, but only concurrent with that of the civil courts. Of such offenses courts-martial may take cognizance under the 62d Article of War, *and, if they first acquire jurisdiction, their judgments cannot be disregarded by the civil courts for mere error or for any reason not affecting the jurisdiction of the military court.*"

In light of its conclusion that the court-martial had jurisdiction over the type of crime involved, the Court held that the Fifth Amendment's Double Jeopardy Clause precluded further proceedings after the court-martial acquittal.

*Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), is another case making it clear that a defect in the exercise of jurisdiction does not deprive an acquittal of its binding effect. In *Benton,* the defendant was charged with larceny and burglary in a single indictment, was acquitted of larceny, but was convicted of burglary. On appeal, the burglary conviction was reversed on the ground that the entire indictment was invalid, and a new trial on both charges was ordered. In holding that the acquittal prevented further proceedings on the larceny charge, the Supreme Court said (395 U.S. at 796-797):

"Maryland argues that ... petitioner's original indictment was absolutely void. One cannot be placed in 'jeopardy' by a void indictment, the State argues. This argument sounds a bit strange, however, since petitioner could quietly have. served out his sentence under this 'void' indictment had he not appealed his burglary conviction. Only by accepting the option of a new trial could the indictment be set aside; at worst the indictment would seem only voidable at the defendant's option, not absolutely void. In any case, this argument was answered here over 70 years ago in *United States v. Ball,* 163 U.S. 662 (1896). In that case Millard Fillmore Ball was indicted, together with two other men, for the murder of one William T. Box in the Indian Territory. He was acquitted and his codefendants were convicted. They appealed and won a reversal on the ground that the indictment erroneously failed to aver the time 'or place of Box's death. All three defendants were retried, and this time Ball was convicted. This Court sustained his double jeopardy claim, notwithstanding the technical invalidity of the indictment upon which he was first tried.... '[A]lthough the indictment was fatally defective, yet, if the court had jurisdiction of the cause and of the party, its judgment is not void, but only voidable by writ of error ...,' and the Government could not have the acquittal set aside

*over the defendant's objections. Id., at 669-670. This case is totally indistinguishable. . . ."* [2]

Very much in point is our recent decision in *Parojinog v. State,* 282 Md. 256, 384 A.2d 86 (1978), involving a juvenile proceeding and a subsequent criminal proceeding based upon the same offenses. During a juvenile waiver hearing, the trial court had in effect adjudicated the defendant a delinquent and imposed sanctions. Later, the court waived jurisdiction, and a criminal indictment was filed against the defendant. We pointed out in *Parojinog* that the juvenile judge had not been authorized under the pertinent statutory provisions or rules to render the adjudication, saying (282 Md. at 262): "Finally, there can be no doubt that the juvenile court erroneously exercised its jurisdiction under the statutory scheme by making an adjudication and disposition without first having decided the waiver issue." Despite the juvenile judge's lack of authority to render a verdict when he did, we went on to point out that the juvenile court nevertheless had subject matter jurisdiction and jurisdiction over the defendant, *id.* at 264-265. Because of this, we held that the improperly rendered juvenile adjudication and disposition precluded, on double jeopardy grounds, further prosecution of the defendant for the same offenses.

In the present case, the District Court had jurisdiction over the offense at the time the verdict of not guilty was rendered. Code (1974, 1979 Cum. Supp.), §§ 4-301 and 4-302(d) of the Courts and Judicial Proceedings Article. As in *Parojinog,* the fact that the court may not have been authorized under the rules to render the verdict does not make it void for double jeopardy purposes. The cases make it clear that an improper or defective exercise of jurisdiction does not deprive an

---

2. Prior to *Benton,* the Maryland cases had taken the position that if the charging document were defective, the verdict did not finally terminate the defendant's jeopardy. *E.g.,* Tate v. State, 236 Md. 312, 316, 203 A.2d 882 (1964); State ex rel. Shatzer v. Warden, 192 Md. 728, 729, 64 A.2d 711 (1949); State v. Williams, 5 Md. 82, 84 (1853). *See also* The State v. Sutton, 4 Gill. 494 (1846), overruled by Hechter v. State, 94 Md. 429, 442, 50 A. 1041 (1902). These holdings regarding defective charging documents were apparently based both on this Court's understanding of common law principles and upon this Court's interpretation of the Fifth Amendment. *See* Hoffman v. State, 20 Md. 425, 434 (1863). Of course, *Benton* puts the matter to rest, at least for purposes of the Fifth Amendment's applicability.

274

acquittal of its finality. Instead, as long as the court rendering a not-guilty verdict has jurisdiction over the offense, the verdict is a bar to further criminal proceedings on the same charge. Consequently, the circuit court in this case erred in denying the defendant's motion.

> *Judgment of the Circuit Court for Montgomery County reversed, and case remanded to that court with directions to enter a verdict of not guilty.*
> *Montgomery County to pay costs.*