REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0189

September Term, 2015

_____

STATE OF MARYLAND

v.

MICHAEL M. JOHNSON

_____

Woodward,
Wright,
Friedman,

JJ.

_____

Opinion by Wright, J.
Dissenting by Friedman, J.

_____

Filed: June 29, 2016

On April 25, 2012, a Baltimore City grand jury indicted appellee, Michael M. Johnson, for the murder of 16-year-old Phylicia Barnes. Johnson was tried by a jury in the Circuit Court for Baltimore City and was acquitted of first-degree murder but convicted of second-degree murder. Subsequently, Johnson filed a motion for a new trial, which the circuit court granted on March 20, 2013, based on a finding of a *Brady* violation.[1]

The case was reset for a new jury trial, which commenced on December 2, 2014. During the presentation of the State's case on Friday, December 19, 2014, Johnson moved for a mistrial. The court initially denied the motion for mistrial, but later indicated that it would take "the weekend to think about this." The State rested at the close of proceedings on that same day, and after the court excused one of the alternate jurors, Johnson made a motion for judgment of acquittal. Without objection from defense counsel, the trial judge suggested that the motion for judgment of acquittal be addressed on Monday "because . . . I've got this other issue to consider between now and then, too."

When trial resumed on Monday, December 22, 2014, the court announced at the outset of the proceedings that it was going to grant the motion for mistrial, then discharged the jury, and rescheduled a retrial for March 9, 2015. On January 14, 2015, Johnson filed a "Motion to Dismiss Indictment on Ground of Double Jeopardy," which

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the withholding of exculpatory evidence is a violation of the defendant's Due Process rights).

the circuit court heard on January 20, 2015. At the close of that motions hearing, the court treated Johnson's motion to dismiss indictment as a motion for reconsideration and struck its previous grant of the mistrial, then proceeded to grant Johnson's motion for judgment of acquittal.

The State filed a new indictment on February 2, 2015, which Johnson moved to dismiss. Following a hearing on March 12, 2015, the circuit court granted Johnson's motion and dismissed the case. The State subsequently appealed,[2] asking us to answer the following:

> Did the circuit court err in granting Johnson's motion for judgment of acquittal twenty-nine days after terminating the case by declaring a mistrial and dismissing the jury; and, did the court subsequently err in granting Johnson's motion to dismiss on double jeopardy grounds?

For the reasons that follow, we reverse the circuit court's judgment.

**Facts**

Phylicia Barnes disappeared on December 28, 2010, while visiting family in Baltimore during the Christmas break. The investigation began as a missing person's case and remained so for four months. On April 26, 2011, the police responded to the Conowingo Dam area of the Susquehanna River in Harford County for the report of an unidentified female body. With the assistance of the Department of Natural Resources, the police removed the body from the water and, through dental records, identified the victim as Barnes. The police then opened a murder investigation focusing on appellant,

---

[2] The State filed a notice of appeal on March 31, 2015, and an amended notice on April 1, 2015. Johnson filed a motion to dismiss the appeal as untimely, which this Court denied on August 10, 2015.

2

Michael M. Johnson, who was the last person to be seen with Barnes before her disappearance.

According to the circuit court, there was a "tremendous amount" of testimony from the various law enforcement agencies that investigated the case. Those officers testified regarding the "hundreds" of text messages between Johnson, who lived in Baltimore, and Barnes, who lived in North Carolina. The officers also testified about a "sexually explicit video" of Johnson and Barnes found on Johnson's phone as well as on Barnes's sister's phone. The State's evidence also included Johnson's own statements from hundreds of phone calls and text messages intercepted by the police.

Prior to the start of the second trial, Johnson filed a motion *in limine* requesting that certain portions of the intercepted communications be redacted. The circuit court granted Johnson's motion in part and ordered that portions of the wiretap communications be redacted. During the testimony of Sergeant David Feltman, the defense moved for a mistrial because a recording of one of those taped communications had not been redacted. Specifically, the defense objected to two comments, one that made reference to Johnson's friend contacting a lawyer ("Tabbie called Neverdon right on the spot"), and the other, a reference to the warrant charging first- and second-degree murder. Defense counsel made the motion for mistrial and argued as follows:

> Your Honor, objection and we would move for a mistrial. Clearly, the disk has not been redacted and it's starting to talk about first-degree and second-degree murder.
>
>          *    *    *
>
> Your Honor ruled that they should not be heard by the jury. They were not admissible for a variety of reasons, the most important one that the first-

3

degree murder, obviously, is that Mr. Johnson has been acquitted of first-degree murder.

I -- and we request a mistrial as the remedy. If Your Honor is disinclined to grant a mistrial, then we would ask that it be stricken . . . that the jury be told to disregard what they heard. I think the only appropriate remedy is a mistrial. I make that clear.

The circuit court initially denied the motion for mistrial and excused the jury.

During further argument on the motion for mistrial, the State responded that any error was inadvertent and suggested that the appropriate remedy was for the court to instruct the jury to disregard the brief comments regarding contacting an attorney and the charges:

Your Honor, there was an error. Your Honor did rule that the mention of first- and second-degree was to be removed. I would point out that the very brief portion that the jury heard was that the warrant said, and it was very clear that it was referring to the search warrant for DNA. It doesn't mention that he was ever actually specifically charged with first-degree murder.

\* \* \*

Your Honor, the issue is specifically what the jury heard, a reference to the paper, meaning the warrant, referencing first- and second-degree. I would suggest that the jury be specifically instructed that anything they heard regarding what a warrant said should be completely disregarded with respect to charges, because what, if anything, a warrant states is irrelevant to the offense that the Defendant is facing here today.

Other than that, Your Honor, I don't believe that this does rise to the level of manifest necessity. They have heard -- this isn't the same as a reference of, you know, he was charged with first-degree and he was acquitted in the first trial. This is specifically referencing what a search warrant said. I believe if Your Honor instructs them that . . . any potential charges a search warrant mentions . . . are to be disregarded by them is more than sufficient to remedy this situation.

4

The circuit court again denied the motion for mistrial, finding that there had been no formal ruling on what portions of the recording were to be redacted and that, in any event, a curative instruction was sufficient:

THE COURT:  I don't think it rises to the level that a mistrial be warranted for any reason.  First of all, as I started to say, there was a great deal of material, and I don't know that I -- it was more in the nature of an agreement that things would be removed as opposed to my ruling that they just could not be permitted to be testified -- and there was an agreement that -- the agreement as to Mr. Neverdon I don't know would have ever reached this, because the allegation with regard to even the little bit they heard, "Tabbie called Neverdon right on the spot.  As soon as the police came in the door, she called and was on the phone with him," I don't know how that necessarily would have been privileged.
                              *     *     *
THE COURT: I understand we --
                              *     *     *
THE COURT: -- talked about this, and it was agreed -- I understand there was an agreement; and, no, I did not specifically rule on each one segment, and this is her calling Neverdon.  She may have had -- I mean, you know, she may well have called Neverdon.  This is the report of somebody by Mr. Johnson saying that she called Neverdon.  It doesn't say called for him, that I asked her to, that I directed her to, or anything of that nature, so even -- I don't know that this, if I had ruled on each one of these little paragraphs, but we -- it was agreed and essentially the State said it could remove all the references to Neverdon, and obviously it missed this one.

But I will instruct the -- I'm not sure exactly how to instruct the jury without highlighting it with regard to that, and I'll get back to that in a minute.

With regard to the comment about the charges, or with regard to the warrant in -- discussed on the tape, what, if anything, they heard, they should disregard with regard to the contents of what the warrant said, so that's about all I can do with regard to that.

I don't think the statement -- it's not that I was charged with, it's not that I'm going to trial for it -- it's none of those things that anybody was concerned about originally.  It's just the mere mention of the charges.  If he had said, you know, a number of other -- arson -- it doesn't really matter what the warrant said, but I will instruct them that they are to disregard

5

anything the warrant said -- I know how to deal with it -- and anything they heard or they may have heard with regard to actions taken by Tabbie -- and it's not even Tabitha, it's Tabbie -- they are to disregard if they, in fact, heard any such thing.

Thereafter, the circuit court instructed the jury to disregard the inadmissible comments:

Ladies and gentlemen, in the recording that has recently been played for you, you may have heard a reference to a warrant. You should ignore any reference to the warrant with regard to -- well, you should ignore any reference to the warrant and it is stricken, if you will, from the record.

Also, if you heard any reference or understood any reference as "Tabbie" you should ignore, and that -- ignore that as well, and that is stricken from the recording.

The remainder of the recording was then played for the jury over Johnson's objection. At the conclusion of the recording, the defense renewed its objection. The circuit court indicated that it would take "the weekend to think about this" and again instructed the jury to disregard the comments:

I - - over Defense's objection, any reference in the recording which you may have heard at the end relating to identifiable charges, you should disregard. It is stricken from the record, and we have reserved on one other issue that still may be affected by that. I have not ruled on that, just so counsel are aware.

The State rested at the close of the proceedings on December 19, 2014. After the circuit court excused one of the alternate jurors, defense counsel moved for judgment of acquittal. The court suggested that the motion for judgment of acquittal be addressed on Monday morning, and defense counsel responded, "[o]kay." The court explained, "I would prefer to put that issue off until Monday because . . . I've got this other issue to consider between now and then, too." Defense counsel responded: "That's fine. We can do the motion for judgment of acquittal on Monday."

6

When trial resumed on Monday, December 22, 2014, the circuit court announced at the outset of the proceedings that it was going to grant the motion for mistrial that it had previously denied. Defense counsel did not object to the granting of the mistrial or request that the court rule on the motion for judgment of acquittal. As to the motion for mistrial, the court ruled as follows:

> For the reasons, which I'll state in a moment, I'm going to grant that Motion for a Mistrial. The substance of the issue relates to the playing of certain information, which was -- by agreement and Court Order -- not to be heard by the jury.
>
> If there was one incident of such material, and it was addressed by the Court, and a motion for a mistrial was denied as to that -- but the second incident is somewhat different; in that, it's repetitive.
>
> If the Court believed that it was intentional or grossly negligent on the part of the State, the ruling would be different than it is now.
>
> But because the Court had the opportunity to actually observe the reaction of the Assistant State's Attorneys conducting this trial, in realizing what was happening -- and clearly, I have never seen a look of shock on an attorney in my courtroom, more than I detected the look of shock on the faces of [the Assistant State's Attorneys upon hearing the purportedly redacted information] -- and for that reason I am going to grant the Motion for a Mistrial.
>
> What is now going to happen as a result of the mistrial, is that we will reconvene tomorrow morning, and we will pick a new trial date. So, I'll ask Counsel to be present tomorrow morning at 9:30 with their calendars.
>
> Does Mr. Johnson require his presence in order to schedule a new date?

At that time, defense counsel objected to re-trial pursuant to double jeopardy:

> Your Honor, I've had an opportunity to briefly speak with Mr. Johnson. And I do want the record to reflect that obviously, Your Honor, has granted our request for a mistrial. But that we do not agree or accept

7

the court's factual findings regarding the State's position in this case. We do not accept that it was not an intentional act on their part.

It will be our position that a re-prosecution of Mr. Johnson in this case will be barred by double jeopardy, as a result of the State's actions. And I just wanted to make that clear on the record at this time.

As far as scheduling goes tomorrow, Your Honor, Mr. Johnson's presence is not necessary to be there for that purpose.

The court stated, "[t]he trial not now being conducted, I'm going to let Mr. Johnson leave, so that we can just let the jurors go out without any other concerns." The court then discharged the jury and directed the parties to return the following day, Tuesday, December 23, 2014.

On December 23rd, a "Scheduling Hearing/Chambers Conference" took place for which Johnson was not present. The circuit court stated that his appearance was not necessary because they were "going to do exactly what I told you yesterday," which was to reschedule the case. The court then directed the parties to "convene in chambers to discuss rescheduling the matter." Defense counsel interjected, however, and said: "I feel like because this is the first time we're on the record again and I need to -- and I don't want to do something without the Defendant being present . . . but we would make a Motion for Bail and we would make a Motion for Judgment of Acquittal." The following colloquy then ensued:

THE COURT: We'll get -- we'll get the defendant then. This is --

[DEFENSE COUNSEL]: No.

THE COURT: -- why I asked yesterday, will he waive his appearance for the purposes of rescheduling. All --

8

[DEFENSE COUNSEL]: And that's why we asked whether it was just a chambers conference, and we were told yes.

THE COURT: Afterwards, afterwards, you asked that. And I said we can do it anyway you want, we'll do it in chambers if that's what you request.

[DEFENSE COUNSEL]: We can go into --

THE COURT: But that was after we went off the record. I still have to call the case so somebody knows what happened. So, let's go set up the rescheduling which is what I thought we were going to do today.

The case was rescheduled to March 9, 2015. On January 14, 2015, Johnson filed a "Motion to Dismiss Indictment on Ground of Double Jeopardy," arguing that "the Double Jeopardy Clause precludes any further re-prosecution of the Defendant in this matter because the State's intentional conduct provoked the Defendant's request for a mistrial." Johnson also argued that "the Double Jeopardy Clause precludes any further re-prosecution of the Defendant in this matter because at the time the Court granted his mistrial, there was no manifest necessity." Finally, Johnson argued that "the Double Jeopardy Clause precludes any further re-prosecution of the Defendant in this matter because the State's evidence was legally insufficient to sustain a conviction."[3]

A hearing on Johnson's motion was held on January 20, 2015, at which time the following exchange occurred:

THE COURT: Would you agree that the ruling on the motion for mistrial, irrespective of your consideration of the validity of it, would have rendered a hearing on the motion for judgment of acquittal moot?
\* \* \*
[DEFENSE COUNSEL]: No. No, it would not have been.

---

[3] In a footnote, Johnson acknowledged that previous opinions issued by this Court "make[] clear that, once the Court grants a mistrial, it loses authority to rule upon a Motion for Judgment of Acquittal." (Emphasis omitted).

9

* * *

THE COURT: Would you address the issue, though, in terms of the way this case actually -- one of the difficulties that we seem to have is I ask a question and you go back to answering the question that I didn't ask. In terms of the posture of this case, after the granting of the motion for mistrial, did that render the motion for judgment of acquittal moot? Or are you contending that the motion for judgment of acquittal --

[DEFENSE COUNSEL]: Your Honor --

THE COURT: -- remains alive in spite of the ruling --

[DEFENSE COUNSEL]: No.

THE COURT: -- on the motion for mistrial?

[DEFENSE COUNSEL]: No. That's our point. The motion for judgment of acquittal was done the minute the Court granted the mistrial. Yes. Under *Malarkey* [*v. State*, 188 Md. App. 126 (2009)], this Court had no further power --

THE COURT: Okay. All right.

[DEFENSE COUNSEL]: -- to grant anything or deny --

THE COURT: Thank you.

[DEFENSE COUNSEL]: -- anything or rule on anything.

THE COURT: Okay.

[DEFENSE COUNSEL]: *Malarkey* makes that -- the *Malarkey* case makes that real clear.

THE COURT: Thank you.

[DEFENSE COUNSEL]: Okay. But we never got a chance to argue that.

After hearing from both parties, the circuit court announced that it would be "striking the granting of the mistrial and . . . will find that there is insufficient evidence as presented at the trial to convict Mr. Johnson." Accordingly, in an "Order Striking Motion for Mistrial

10

and Granting Motion for Judgment of Acquittal," entered on January 20, 2015, the court granted the judgment of acquittal.

In the order, the trial judge noted that two motions were outstanding when the circuit court recessed on December 19, 2014: a motion for mistrial and a motion for judgment of acquittal. The judge recalled stating that he would consider the motion for judgment of acquittal "first thing" on Monday, December 22, 2014, but instead granted the motion for mistrial at the outset of the proceeding. In a footnote, the trial judge acknowledged that "no discussion occurred on December 22, 2014, as to any issue other than the Motion for Mistrial. Neither the Court nor Defense mentioned the outstanding and still pending [motion for judgment of acquittal]."

Addressing the motions hearing held on January 20, 2015, the trial judge noted that although "Defense Counsel . . . agreed that the granting of the [motion for mistrial] would render the issues raised on the [motion for judgment of acquittal] moot," he "still requested both parties to address the issues which, though mooted, would have constituted the arguments for and against the [motion for judgment of acquittal]." The trial judge then concluded:

> The Court is troubled by the posture of the case because of the failure to rule upon the [motion for judgment of acquittal], which the record clearly demonstrates the Court stated it was to consider "first thing." That it did not has placed the matter in a somewhat difficult posture.
>
> Therefore, the Court will treat the Motion of the Defense [*i.e.*, the Motion to Dismiss Indictment on Ground of Double Jeopardy] as a motion to reconsider its rulings, both with regard to the subject matter of the [motion for judgment of acquittal] and the [motion for mistrial], and will strike the grant of the mistrial and consider the [motion for judgment of acquittal].

11

Thereafter, the trial judge explained why "there was insufficient evidence when taken as a whole, to establish the criminal culpability of Michael Johnson of second-degree murder," thus warranting the grant of his motion for judgment of acquittal.

On February 2, 2015, the State filed a new indictment, which Johnson subsequently moved to dismiss. After hearing the matter on March 12, 2015, the trial judge stated that "the procedural misstep came in this case when I failed to do what I said I was going to do, which was to address the [motion for judgment of acquittal] first thing Monday morning[.]" He expressed his belief that there is a "significant distinction" between this case and [*State v.*] *Sirbaugh*[, 27 Md. App. 290 (1975)] and *Malarkey*, despite reading those cases to "suggest that the granting of a Motion for Mistrial removes or takes jurisdiction away from the Court for any further proceeding." According to the trial judge, however, this characterization of the case law was "overly broad." Ultimately, he concluded that he "had the authority to correct a procedural misstep," which he did when he struck the motion for mistrial and granted the motion for judgment of acquittal. The judge stated: "I believe that my ruling on the Judgment of Acquittal was correct at the time I ruled it, and I will grant the Motion to Dismiss the Indictment."

**Discussion**

The State primarily argues that, contrary to the circuit court's conclusion, two cases previously decided by this Court, *Sirbaugh* and *Malarkey*, are indeed controlling and directly applicable here. According to the State, those cases "make clear that the declaration of a mistrial and dismissal of the jury terminates the circuit court's authority

12

over the case." As such, the State contends that "the court had no authority to strike its earlier mistrial ruling, [] its purported judgment of acquittal was a nullity," and it "erred in dismissing the State's indictment on double jeopardy grounds."

In response, Johnson argues that the circuit court had jurisdiction to grant the motion for judgment of acquittal, and it did so without error and or abuse of discretion. Specifically, Johnson avers that trial courts have broad discretion to reconsider the grant of a motion for mistrial. Moreover, Johnson contends that trial courts do not forfeit their jurisdiction even when they fail to comply with a mandatory deadline to act.

We agree with Johnson that, based on "the concept of 'fundamental jurisdiction,'" the circuit court retains the power to grant the motion for judgment of acquittal and the grant of that motion bars further criminal proceedings on the same charge. "Juridically, jurisdiction refers to two quite distinct concepts: (i) the power of a court to render a valid decree, and (ii) the propriety of granting the relief sought." *First Federated Commodity Trust Corp. v. Comm'r of Sec. for Maryland*, 272 Md. 329, 334 (1974) (citing *Moore v. McAllister*, 216 Md. 497, 507 (1958)). The first, often referred to as "fundamental jurisdiction," has been defined as "the power residing in [a] court to determine judicially a given action, controversy, or question presented to it for decision." *Pulley v. State*, 287 Md. 406, 415 (1980) (citations omitted). "It is only when the court lacks the power to render a decree . . . or because the court is without authority to pass upon the subject matter involved in the dispute, that its decree is void. On the other hand, the question of whether it was appropriate to grant the relief merges into the final decree and cannot

13

thereafter be successfully assailed for that reason once enrolled." *First Federated Commodity Trust Corp.*, 272 Md. at 334 (internal citations omitted).

Stated differently, fundamental jurisdiction refers to a court's general authority to carry out its constitutional and legal mandates with regard to a given case. *See Pulley*, 287 Md. at 416 ("'Fundamental jurisdiction,' as we now use that term, is the power to act with regard to a subject matter which 'is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.'") (Citation omitted). By contrast, proprietary jurisdiction is invoked with regard to a narrow decision that a court is asked to render – or an action it is asked to take – *within* a case validly before it, and which may or may not accord with those general laws and rules restraining the court in any given case. *See id.* at 417 ("[T]he trial court retains its 'fundamental jurisdiction' over the cause, but its right to exercise such power may be interrupted by (i) statute or Maryland Rule, (ii) the posting of authorized appeal bond, or bail following a conviction and sentence, or (iii) a stay granted by an appellate court, or the trial court itself, in those cases where a permitted appeal is taken from an interlocutory or final judgment"). A court, therefore, may act "within its general authority" in issuing a ruling, but at the same time "err[] in the manner in which it exercise[s] its power." *Cnty. Comm'rs of Carroll Cnty. v. Carroll Craft Retail, Inc.*, 384 Md. 23, 45 (2004).

In *State v. Taylor*, 371 Md. 617, 620-29 (2002), the Court of Appeals reviewed two instances where the trial court, in the context of a pretrial motions hearing long before jeopardy attached, granted a motion to dismiss by hearing evidence beyond the

allegations of the charging document, and it found that the evidence was not sufficient to constitute a violation of the statutes relied upon by the State. Although the *Taylor* Court concluded that the trial court "erred by rendering a decision on the sufficiency of the evidence when it should have limited itself to considering the legal sufficiency of the indictment on its face," it held that the grant of the motion to dismiss "substantively constituted judgments of acquittal and therefore must be given effect as such for jeopardy purposes." *Id.* at 644. The Court stated:

> The third common law double jeopardy principle is the plea of *autrefois acquit*.
>
> > It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, *the verdict of acquittal can never afterward, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law*, or of a misconception of fact on the part of the jury.
>
> *State v. Shields*, 49 Md. 301, 303 (1878) (emphasis added). This plea has been interpreted broadly. A verdict of "not guilty" invokes the protection against double jeopardy such that procedural errors or acquittals entered on a fatally defective indictment bar subsequent prosecution.

*Id.* at 633 (citations omitted).

When the concept of fundamental jurisdiction is applied to the case *sub judice*, however, Johnson's argument fails. We explain.

The instant case began with the second prosecution of Johnson for second degree murder. Like *Sirbaugh* and *Malarkey*, the second prosecution ended in a mistrial, when

15

on December 22, 2014, the trial court granted Johnson's motion for a mistrial and discharged the jury. Under Maryland law,

> **the grant of a mistrial is "tantamount to a holding that there had been no trial at all,"** which does not "deny either the accused or the State the opportunity to litigate directly their rights on retrial." *Cook v. State*, 281 Md. 665, 670-71, 381 A.2d 671, 674 (1978); *see also Powers v. State*, 285 Md. 269, 285, 401 A.2d 1031, 1040 (1979) (**"a mistrial is equivalent to no trial at all"**).

*Harrod v. State*, 423 Md. 24, 35 (2011) (emphasis added).

In analyzing the legal effect of a grant of a mistrial, the Court of Appeals in *Harrod* cited with approval to the opinion of the Supreme Court of Idaho in *State v. Bitz*, 404 P.2d 628 (Idaho 1965). *Harrod*, 423 Md. at 35. In *Bitz*, the Idaho Supreme Court stated:

> **The record shows that the proceedings** which had taken place during February 1963 **were declared to be a "mistrial" which is in essence a conclusion of law that no trial had taken place.** Many authorities supporting this statement are cited in respondent's brief, among them being *Vilander v. Hawkinson* (1958), 183 Kan. 214, 326 P.2d 273, wherein it is stated:
>
>> **"In other words, a mistrial is a nugatory trial and is equivalent to no trial**, whereas a new trial recognizes and proceeds upon the assumption there has been a complete trial which, for sufficient reasons, has been set aside."
>
> In *Ex Parte Alpine*, 1928, 203 Cal. 731, 265 P. 947, the court said, "a mistrial and a new trial are not the same thing in name or effect. A mistrial is equivalent to no trial." In 58 C.J.S. pp. 833–834, **the term "mistrial" is defined as**
>
>> **"An erroneous, invalid, or nugatory trial; . . . a trial legally of no effect by reason of some error in the proceedings; a proceeding which has**

> **miscarried and the consequence is not a trial**; a failure of trial. . . .
>
> "In legal effect a mistrial is equivalent to no trial at all, and is declared because of some circumstance indicating that justice may not be done if the trial continues."

404 P.2d at 630-31 (emphasis added).

Given that a mistrial is equivalent to no trial at all, the Court of Appeals in *Harrod*, and the Supreme Court of Idaho in *Bitz*, were confronted with the issue of "[w]hether a mistrial in a criminal context restores the parties to their original pretrial positions." *Harrod*, 423 Md. at 35; *see Bitz*, 404 P.2d at 630. The Court of Appeals concluded that "the grant of a mistrial in a criminal case does create a 'tabula rasa' and requires the litigants to observe pretrial procedures once again." *Harrod*, 423 Md. at 35; *see Bitz*, 404 P.2d at 631 ("We conclude that the proceedings which were terminated by the order granting defendant's motion for mistrial did not constitute a trial and that upon the entry of such order the case reverted to the status it had prior to the commencement of such proceedings."). In *Gantt v. State*, Judge Charles Moylan, Jr., writing for this Court, identified the five stages of a criminal proceeding:

> The first was the accusatory stage resulting in the filing of the indictment by the grand jury. The second stage, *in posse* if not *in esse*, was that at which any pretrial motions could be filed and resolved. The third stage was the actual trial on the merits of guilt or innocence. The fourth stage was the filing by the State's Attorney of notice of intention to proceed under the mandatory sentencing provisions of [Article 27,] § 643B(c). The fifth and final stage was the sentencing hearing itself.

73 Md. App. 701, 704 (1988).

17

In *Harrod*, the Court of Appeals indicated that, upon a mistrial, the new prosecution commenced at the second stage of a criminal proceeding—which, according to *Gantt*, is the stage "at which pretrial motions could be filed and resolved." *See Harrod*, 423 Md. at 36; *Gantt*, 73 Md. App. at 704.

Applying the above principles to the instant case, it is clear that, when the trial court granted Johnson's motion for a mistrial, the trial in the second prosecution became, as a matter of law, "no trial at all." *Harrod*, 423 Md. at 35 (citations and internal quotation marks omitted). In other words, the grant of a mistrial had the legal effect of declaring that the trial in the second prosecution had never taken place. *See Bitz*, 404 P.2d at 631.

Thereafter, the trial court proceeded with the third prosecution of Johnson for second degree murder. The court instructed the parties to return to court the next day for the purpose of scheduling a new trial date. The next day, December 23, 2014, the parties reconvened,[4] and the trial court set March 9, 2015 as the new trial date. According to *Harrod* and *Gantt*, the parties were now in the second stage of a criminal proceeding, namely the pretrial stage of the third prosecution where appropriate motions could be filed by the parties. *See Harrod*, 423 Md. at 36; *Gantt*, 73 Md. App. at 704. Indeed, Johnson did just that by filing a Motion to Dismiss Indictment on Ground of Double Jeopardy on January 14, 2015.

---

[4] Johnson was not present for the scheduling conference, because defense counsel had waived his appearance the previous day.

However, at the hearing on Johnson's motion to dismiss on January 20, 2015, the trial court did not rule on that motion. Instead, the court considered such motion as a motion for reconsideration, vacated the grant of the mistrial, and granted Johnson's motion for judgment of acquittal that had been made, but not ruled upon, in the second prosecution. By doing so, the court attempted to revive the second prosecution and to render a ruling on a motion made in that proceeding. It is clear that the court made no ruling in the third prosecution because, as previously indicated, the third prosecution was in the pretrial stage—no trial had commenced; no evidence had been adduced; and no ruling on the sufficiency of the evidence to convict could be made.

Therefore, the question squarely posed in the case *sub judice* is whether the trial court had fundamental jurisdiction to rule on a motion made in a criminal proceeding in which a mistrial had been granted and the jury discharged. The answer to this question is "no," because at the time that the court ruled on the motion for judgment of acquittal, the second prosecution of appellee was "no trial at all," "a nugatory trial," or "a trial legally of no effect." *See Harrod*, 423 Md. at 35, *Bitz*, 404 P.2d at 630-31. In other words, a trial court cannot exercise fundamental jurisdiction over subject matter that no longer exists.

Nevertheless, Johnson argues that "the trial court has discretion to reconsider the grant of a motion for mistrial," and thus can avoid the legal effect of a mistrial by in essence recreating that which no longer existed. Here, the trial court did reconsider the grant of the motion for a mistrial and struck the same before ruling on the motion for judgment of acquittal. The Maryland cases cited by Johnson do not support his

19

argument. *See Christian v. State*, 309 Md. 114, 123-24 (1987) (holding that a trial court, after verdict but prior to sentencing, has the authority to vacate an order granting a new trial); *Nash v. State*, 439 Md. 53, 68-69 (2014) (noting that trial judges have broad discretion when it comes to granting a mistrial); *Powell v. State*, 406 Md. 679, 694 (2008) ("We note that a mistrial is generally an extraordinary remedy and that, under most circumstances, the trial judge has considerable discretion regarding when to invoke it.").

Johnson also cites to four out of state cases to show that "a trial court's authority to reconsider the grant of a mistrial has in fact been recognized." Again, none of these cases support the authority of a trial court in Maryland to reconsider the grant of a mistrial, at least *after* the jury has been discharged. Two of these cases, *People v. McGee*, 636 N.W.2d 531 (Mich. App. 2001), *vacated on other grounds*, 670 N.W.2d 665 (Mich. 2003), and *McGraw v. State*, 688 So.2d 764 (Miss. 1997), do recognize such authority to reconsider, but do so on the basis of a specific state court rule of procedure not found in Maryland. *See McGee*, 636 N.W.2d at 539 (stating that "the trial court was authorized by MCR 6.435(B) to revisit its decision to declare a mistrial"); *McGraw*, 688 So.2d at 768 (stating that the trial court has the power to grant a judgment of acquittal after a jury is unable to agree on a verdict based on a civil rule of procedure expressly authorizing the power to grant a JNOV in such circumstances, which was adopted by case law in criminal proceedings).

The other two cases relied upon by Johnson involved situations where the reconsideration of the grant of a mistrial occurred before the jury was discharged. In *Rodriguez v. State*, the trial court granted defense counsel's motion for mistrial made

20

during the defense's presentation of its case. 852 S.W.2d 516, 517 (Tex. Crim. App. 1993) (en banc). "After the mistrial had been granted but before the trial court had addressed the jury to explain what had occurred, the prosecutor asked for a bench conference. Out of an abundance of caution, the trial court removed the jury from the courtroom." *Id*. During the bench conference, the court withdrew its order granting a mistrial, then brought the jurors back into the courtroom and resumed the trial. *Id*. The Court of Criminal Appeals of Texas held that the court's withdrawal of its order of mistrial was proper, explaining:

> That an order granting a mistrial that is *not* subsequently withdrawn does indeed have the effect of nullifying all proceedings to that point does *not* mean the trial court may not rescind that order, and continue with the trial, so long as that remains a viable option under the circumstances.
>
> Here the trial court declared a mistrial, but that order was apparently withdrawn before the jury was discharged and presumably even before the jury was made aware of what exactly had occurred. On these facts, we hold that the trial court retained its authority to withdraw its order of mistrial.

*Id*. at 520 (italics in original).

Similarly, in *People v. Dawkins*, the Court of Appeals of New York held that the trial court's grant of a mistrial was

> *inchoate* and thus, subject to recision by the court until it took the next step that was statutorily required under [the Rules] to effectuate the termination of the trial because of jury deadlock, i.e., discharge of the jury after the court determined that the jury could not reach a verdict within a reasonable time.

624 N.E.2d 162, 164 (N.Y. 1993) (italics in original) (citation omitted).

21

Because Maryland does not have a specific statute or rule authorizing a trial court to exercise revisory power over the grant of a mistrial,[5] such power, if it exists at all, exists only until the jury is discharged. After the jury is discharged, there is no legal or practical way to place the parties in the same position as they held immediately prior to the declaration of a mistrial. In the instant case, the trial court struck the grant of a mistrial approximately one month after the declaration of a mistrial and the discharge of the jury.

Moreover, *Taylor*, *supra*, and *Block v. State*, 286 Md. 266 (1979), are distinguishable from the instant case, because neither case involved a mistrial and the trial court's subsequent ruling relating to the mistried criminal proceeding. The trial court in *Taylor*, in the context of a pretrial motions hearing long before jeopardy attached, granted a motion to dismiss by hearing evidence beyond the allegations of the charging document, and it found that the evidence was not sufficient to constitute a violation of the statutes relied upon by the State. Here, the trial court made no ruling pertaining to the pending criminal proceeding, namely the third prosecution of Johnson. Meanwhile, *Block* involved the trial court's reconsideration of its guilty verdict in a bench trial and the entry of a not guilty verdict when the statutory period for revision of verdict had lapsed. 286 Md. at 267, 270. There was no indication in *Block* that the lapse of the statutory revision period in any way rendered the proceeding a nullity. *See id*. at 270.

_____

[5] Maryland Rule 4-331 grants the trial court (1) the authority, upon a timely filed motion after verdict, to order a new trial, Md. Rule 4-331(a), and (2) the revisory power, upon a timely filed motion after sentence, "to set aside an unjust or improper verdict and grant a new trial," Md. Rule 4-331(b).

By contrast, both *Sirbaugh* and *Malarkey* involved the grant of a mistrial—in *Sirbaugh*, the trial court's grant of a motion for judgment of acquittal after the jury was dismissed, and in *Malarkey*, the trial court's denial of a motion for judgment of acquittal made almost two months after the declaration of a mistrial. *See Sirbaugh*, 27 Md. App. at 291-92; *Malarkey*, 188 Md. App. at 144. Although neither *Sirbaugh* nor *Malarkey* applied the principle of fundamental jurisdiction in its respective analysis, both holdings are consistent with such principle in the context of a mistrial.

We also decline Johnson's invitation to apply the *nunc pro tunc* doctrine to this case. "*Nunc pro tunc* signifies now for then, or, in other words, a thing is done now, which shall have the same legal force and effect as if done at time when ought to have been done." *Short v. Short*, 136 Md. App. 570, 579 (2001) (citations omitted). According to Johnson, "the equities mandate that the order granting judgment of acquittal relate back to the point at which the defense timely made the motion, thus creating entitlement to a ruling." He fails to acknowledge, however, that "the purpose of a *nunc pro tunc* entry is to correct a clerical error or omission as opposed to a judicial error or omission." *Prince George's Cnty. v. Commonwealth Land Title Ins. Co.*, 47 Md. App. 380, 386 (1980). As the State points out, Johnson does not even attempt to suggest that the error in this case was "a clerical error or omission," nor could he. Thus, the *nunc pro tunc* doctrine is inapplicable.

Finally, citing *Harrison-Solomon v. State*, 442 Md. 254 (2015), Johnson maintains that trial courts do not forfeit their jurisdiction even when they fail to comply with a mandatory deadline to act. But, his reliance on *Harrison-Solomon* is misplaced because

23

unlike in that case, there was no deadline imposed upon the trial court here. In other words, the failure to meet a statutory deadline does not equate to a relinquishment of authority, which is what the trial court did when it granted Johnson's motion for mistrial before it addressed the pending motion for judgment of acquittal.

In sum, when the trial court declared a mistrial and discharged the jury in the second prosecution, the second prosecution became in the eyes of the law "no trial at all," and the trial court thereafter had no revisory power to revive the second prosecution and no fundamental jurisdiction to grant a judgment of acquittal in that proceeding. *See Harrod*, 423 Md. at 35. Without fundamental jurisdiction, the grant of a judgment of acquittal "is a nullity, for an act without such jurisdiction is not to act at all." *Pulley*, 287 Md. at 416 (citations and internal quotation marks omitted). Therefore, the doctrine of *autrefois acquit* does not apply to bar the third prosecution of Johnson for second degree murder.

For all of the foregoing reasons, we reverse the circuit court's dismissal of the State's February 2, 2015 indictment, and remand the case so that the State can proceed with a new trial against Johnson.[6]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

[6] In so doing, we effectively vacate the court's judgment granting Johnson's motion for judgment of acquittal and reinstate its judgment granting the motion for mistrial.

24

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 189

September Term, 2015

_____

STATE OF MARYLAND

v.

MICHAEL M. JOHNSON

_____

Woodward,
Wright,
Friedman,

JJ.

_____

Dissent by Friedman, J.

_____

Filed: June 29, 2016

The trial judge heard all of the evidence against Michael Johnson and pronounced it insufficient. By granting a motion pursuant to Rule 4-324, the judge said, in effect, that there was "no relevant evidence [that] is legally sufficient to sustain a conviction." *Brooks v. State*, 299 Md. 146, 151 (1984). That is powerful stuff. Once that happens, we don't usually give the State a second (or in this case, third) bite at the apple. Prohibitions on placing defendants in double jeopardy, whether arising from federal constitutional or state common law principles,[1] bar subsequent re-prosecutions after such an acquittal. The majority acknowledges this general rule, but argues that, because the trial judge had already granted a mistrial, the court was left with insufficient jurisdiction to then grant the motion for judgment of acquittal. Thus, in the opinion of the majority, the acquittal was ineffective. Because I disagree, I must, respectfully, dissent.

## I.

I would begin the analysis by conceding that the grant of the motion for judgment of acquittal after the mistrial was not just unusual, it was procedurally defective. I don't think, however, that the defect matters. The Court of Appeals has repeatedly held, in a variety of contexts, that even a procedurally defective acquittal—so long as the court has

---

[1] Maryland doesn't have a state constitutional double jeopardy prohibition. *State v. Long*, 405 Md. 527, 536 (2008) ("Despite the fact that the Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy.").

subject matter jurisdiction over the crime and personal jurisdiction over the defendant—

creates a double jeopardy bar to repeat prosecution. *State v. Taylor*, 371 Md. 617 (2002);

*Block v. State*, 286 Md. 266 (1979); *Parojinog v. State*, 282 Md. 256 (1978). In *Taylor*, for

example, the Court of Appeals explained that "[c]oncluding that the trial courts erred

procedurally does not end our analysis. … [T]he substance of the trial judges' rulings was

to grant judgments of acquittal and … we must treat them [as such] for double jeopardy

analysis." *Taylor*, 371 Md. at 648. The Court explained that, "even though the form or

timing of a trial court action may be erroneous, it is the substance of the action that is

determinative for jeopardy analysis." *Id.* at 650. The Court concluded by neatly

summarizing the holding in a previous case on the subject, *Block v. State*:

> [In *Block*, w]e rejected the State's argument that the District
> Court was without jurisdiction to revise the guilty verdict
> because a statutory three-day period in which a verdict may be
> revised had lapsed before the defendant's motion for
> reconsideration was filed. Instead, we emphasized that
> "jurisdiction" for double jeopardy analysis means jurisdiction
> in a most basic sense. Merely because there was an error in the
> exercise of jurisdiction did not mean that the court proceedings
> were a nullity. *Block,* 286 Md. at 270. An acquittal, whether
> rendered erroneously or not, has binding effect for double
> jeopardy purposes. *Block,* 286 Md. at 272. We held that "the
> fact that the court may not have been authorized under the rules
> to render the verdict does not make it void for double jeopardy
> purposes." *Block,* 286 Md. at 273.

*Id.* (describing *Block*) (parallel citations omitted). Further, *Block* explicitly addressed

procedural error, highlighting in turn an earlier case where a "juvenile judge had not been

authorized under the pertinent statutory provisions or rules to render the adjudication."

*Block*, 286 Md. at 273 (citing *Parojinog*, 282 Md. at 262). Despite the juvenile judge's erroneous exercise of jurisdiction and "lack of authority to render a verdict when he did, [the Court of Appeals] went on to point out that the juvenile court nevertheless had subject matter jurisdiction and jurisdiction over the defendant." *Id.* (explaining *Parojinog*). The *Block* Court explained: "[A]n improper or defective exercise of jurisdiction does not deprive an acquittal of its finality. Instead, as long as the court rendering a non-guilty verdict has jurisdiction over the offense, the verdict is a bar to further criminal proceedings on the same charge." *Id.* at 273-74. Thus, even if there was a procedural defect, I think that a sufficient residue of jurisdiction remained to allow the trial court to grant the judgment of acquittal and for that grant to bar subsequent prosecution.[2]

## II.

The majority relies extensively on *Harrod v. State*, 423 Md. 24 (2011), but I don't think that that case supports the majority's conclusion—especially because of the careful reading that my colleagues give *Harrod*. In *Harrod*, the Court of Appeals held that a mistrial in a criminal case creates a "tabula rasa," a clean slate. *Harrod*, 423 Md. at 35. A

---

[2] The majority distinguishes *Block* and *Taylor* on the basis that they arose in different procedural contexts then does Johnson's case. Maj. Slip Op. at 22. I find the distinctions unimportant and unpersuasive. More critically, the Court of Appeals has encouraged us to look to "the substance of what occurred and not simply the procedural form." *Wright v. State*, 307 Md. 552, 570 (1986).

less discriminating reader of *Harrod* might argue that it means what it literally says that, after a mistrial, the case returns to the very beginning.

The majority and I agree, however, that *Harrod* doesn't mean precisely what it says. *See* Maj. Slip Op. at 18. *Harrod* relied on a taxonomy of criminal trials developed by this Court and consisting of five stages:

> (1) the accusatory stage resulting in the filing of the indictment, (2) the stage at which any pretrial motions could be filed and resolved, (3) the actual trial on the merits of guilt or innocence, (4) the filing of the State's Attorney's notice of intention to proceed under mandatory sentencing procedures, and (5) the sentencing hearing itself.

*Hammersla v. State*, 184 Md. App. 295, 311 (2009) (citing *Gantt v. State*, 73 Md. App. 701, 704 (1988)). While *Harrod* talked of a clean slate and a new beginning, what it did was actually different. The case wasn't sent back to Stage 1, at which time the State would have been required to file a new indictment. Nor was the case sent back to Stage 2 at which pre-trial motions, like Harrod's motion to suppress, would have been required to be redundantly reargued. Rather, it was sent back to the beginning of Stage 3 for a new trial. *Harrod*, 423 Md. at 36.

Using this framework, the majority suggests that, after Johnson's Stage 3 mistrial, his case should be returned to Stage 2 for pre-trial procedures. Maj. Slip Op. at 18. I disagree and think instead that Johnson's case, if it was to be returned at all, should be returned to the beginning of Stage 3 for a new trial. But our disagreement on this point doesn't really matter. Neither of our positions say anything about the amount or quality of

jurisdiction remaining in the court after granting the mistrial. Despite the majority's reliance, I think *Harrod* here is a red herring.

III.

A more compelling criticism of my position is that *stare decisis* ought to preclude reconsideration of a question that we resolved in two prior reported opinions: *Malarkey v. State*, 188 Md. App. 126 (2009), and *State v. Sirbaugh*, 27 Md. App. 290 (1975). *Sirbaugh* held that the grant of a mistrial deprived the trial court of jurisdiction to rule on a motion for judgment of acquittal and, therefore, that the grant of the judgment of acquittal was ineffectual and did not create a double jeopardy bar. *Sirbaugh*, 27 Md. App. at 294. In *Malarkey*, this Court declined to overrule *Sirbaugh*. *Malarkey*, 188 Md. App. at 162.

Interestingly, besides being the leading modern case on the question of acquittal after a mistrial, *Malarkey* is also the leading case discussing the application of the doctrine of *stare decisis* in this Court. Unfortunately, however, I think *Malarkey* gets this point wrong too. In *Malarkey*, we found that *stare decisis* compelled us to follow the result in *Sirbaugh*, stating:

> "*Stare decisis*, which means to stand by the thing decided, 'is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Livesay v. Baltimore Cnty.*, 384 Md. 1, 14 (2004) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)); *State v. Adams*, 406 Md. 240, 259 (2009). Its purpose is "'to insure that people are guided in their personal and business dealings by prior court decisions, through the established and fixed principles they announce.'" *Corby v. McCarthy*, 154 Md. App. 446, 480

(2003) (quoting *Plein v. Dep't of Labor, Licensing and Regulation*, 269 Md. 421, 435 (2002)); *see also Thompson v. State*, 393 Md. 291, 306 (2006) ("'We are cognizant of the importance of *stare decisis* and the resulting certainty, definition, and dependability it gives the law.'") (citation omitted). In *Livesay*, the Court said, 384 Md. at 14-15:

> The United States Supreme Court has noted that "by the important doctrine of *stare decisis* … we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion." *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986). That Court also explained that *stare decisis* "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact." *Id*. at 265-66. While a court has the judicial power to overrule prior cases, courts generally act in a constrained manner to create predictability, "stability and integrity in the law." *McMellon v. United States*, 387 F.3d 329, 355 (4th Cir. 2004). To be sure, the doctrine of *stare decisis* does not "preclude us from changing or modifying a common law rule when conditions have changed or that rule has become so unsound that it is no longer suitable to the people of this State."

*Livesay*, 384 Md. at 15; *see also Adams*, 406 Md. at 259 (stating that the "inertial and institutional devotion to *stare decisis* is not absolute … for we will strike down a decision that is 'clearly wrong and contrary to established principles'") (citation omitted). But, "departure from the rule should be the extraordinary case, especially so when the change will have a harmful effect upon society." *Id. See Bozman v. Bozman*, 376 Md. 461, 493 (2003).

*Malarkey*, 188 Md. App. at 161-62 (parallel citations omitted). *Malarkey* principally relied upon descriptions of the doctrine of *stare decisis* from supreme courts: the United States Supreme Court and the Court of Appeals of Maryland. While the prudential concerns that apply to those courts apply to us as well, intermediate appellate courts are, and ought to be, even more constrained by additional institutional concerns.

In fact, we follow a more strict version of *stare decisis* than *Malarkey* instructs: "A reported decision is a decision *by the Court*, not a panel, and is not reported unless approved by at least a majority of the members of the Court. Moreover, a reported decision constitutes binding precedent." *Archers Glen Partners, Inc. v. Garner*, 176 Md. App. 292, 325 (2007) (emphasis in original). Federal courts of appeal follow this same strict form of *stare decisis* and have all adopted strong "law of the circuit" rules, either by case law or by internal operating rules, which preclude a panel of the circuit from overruling the decision, particularly the reported decision, of another panel of the circuit. *See, e.g., Shubargo v. Astrue*, 498 F.3d 1086, 1088 n.1 (10th Cir. 2007) ("[W]e remind the [appellee] that we cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court.") (internal quotation omitted); *F.D.I.C. v. Abraham*, 137 F.3d 264, 268-69 (5th Cir. 1998) ("We are, of course, a strict *stare decisis* court. One aspect of that doctrine to which we adhere without exception is the rule that one panel of this court cannot disregard, much less overrule, the decision of a prior panel."); 6th Cir. R. 32.1 ("Published panel opinions are binding on later panels."); Joseph W. Mead, *Stare Decisis in the Inferior*

*Courts of the United States*, 12 Nev. L. J. 787, 796-800 (2012). Many state intermediate appellate courts have adopted similar rules. *See, e.g., Alawad v. Texas*, 57 S.W.3d 24, 27 (Tex. Ct. App. 2001) ("Until we are told otherwise, we are bound by our prior opinions."); *Wisconsin v. Seeley*, 567 N.W.2d 897, 901-02 (Wis. Ct. App. 1997) ("a decision by [this court] is binding and must be followed as precedent by all other intermediate courts, even if wrongly decided."). Thus, because of the strict version of *stare decisis* that applies to this Court, I would hold myself even more firmly bound to follow *Malarkey* than *Malarkey* itself instructs.

Despite this, I would still overrule *Malarkey* and *Sirbaugh*. Even in a strict *stare decisis* intermediate appellate court, there is an exception for the intervening decision of the court sitting *en banc* or by a higher court. *See, e.g., United States v. Johnson,* 256 F.3d 895, 915-16 (9th Cir. 2001) ("Where … it is clear that a majority of the panel … made a deliberate decision to resolve the issue, that ruling becomes the law of the circuit and can only be overturned by an *en banc* court or by the Supreme Court."); *Dir., Office of Workers' Comp. Programs, U. S. Dep't of Labor v. Peabody Coal Co.*, 554 F.2d 310, 333 (7th Cir. 1977) ("As a general rule, one panel cannot overrule the precedents set by another panel, absent some intervening factor such as a new controlling decision of the Supreme Court."); *Cole v. Triangle Brick*, 524 S.E.2d 79, 81 (N.C. Ct. App. 2000) ("Where a panel of this Court has decided the same issue, albeit in a different case, a subsequent panel is bound by that precedent, unless it has been overturned by a higher court.") (internal quotation omitted); 6th Cir. R. 32.1 ("A published opinion is overruled only by the court *en banc*.").

I think that *Malarkey* was wrong in failing to appreciate that *Sirbaugh* had been overruled *sub silentio* by Court of Appeals cases such as *Block* and *Taylor*.

IV.

Our protections against double jeopardy require the State to put on its case against a defendant once and only once. If the evidence that it presents is insufficient to convict, that defendant can never again be charged with the same crime. This is not only necessary for our sense of fairness, it operates to protect us all from a thankfully hypothetical tyrant prosecutor who would bring successive prosecutions until obtaining conviction.

The trial court heard all of the State's evidence against Michael Johnson and found it insufficient as a matter of law. Its decision to grant the motion for judgment of acquittal is, in my mind, final and conclusive, and, under Maryland's common law of double jeopardy, it precludes the State from retrying him for this crime. Therefore, I dissent.