Michael M. Johnson v. State of Maryland, No. 38, Sept. Term, 2016. Opinion by Battaglia, J.

**CRIMINAL LAW – TRIAL – PROVINCE OF COURT AND JURY IN GENERAL – DIRECTION OF VERDICT – OF ACQUITTAL – NECESSITY, REQUISITES AND TIME OF MOTION**

Even when a trial judge has subject matter jurisdiction and personal jurisdiction over a case, the grant of acquittal outside the scope of Maryland Rule 4-324 is not a mere procedural irregularity but an act without authority.

**CRIMINAL LAW – TRIAL – ISSUES RELATING TO JURY TRIAL – DISCHARGE OF JURY WITHOUT VERDICT; MISTRIAL – DECISION OR ORDER; FINDINGS**

The declaration of a mistrial and discharge of the jury obviated the trial judge's authority to enter a judgment of acquittal.

Circuit Court for Baltimore City
Criminal Case Nos. 112116013, 115033013
Argued: December 2, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 38

September Term, 2016

_____

MICHAEL M. JOHNSON

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Battaglia, Lynne A. (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Battaglia, J.

_____

Filed: April 26, 2017

Does an acquittal entered weeks after a judge declared a mistrial and discharged the jury have the same effect as an acquittal declared after all of the evidence is adduced under Maryland Rule 4-324?[1] Michael M. Johnson, Petitioner, asserts that the answer must be yes, while the State would answer the question in the negative.

The four questions raised by Johnson in his petition for certiorari,[2] 449 Md. 410 (2016), which we have collapsed into two for clarity, queue up the issue:

---

[1] Maryland Rule 4-324 provides:
> (a) **Generally.** A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.
> (b) **Action by the court.** If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall enter the judgment or direct the clerk to enter the judgment and to note that it has been entered by direction of the court. The court shall specify each count or degree of an offense to which the judgment of acquittal applies.
> **Cross references.** — Article 23 of the Maryland Declaration of Rights and Code, Criminal Procedure Article, § 6-104.
> (c) **Effect of denial.** A defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion.

[2] Johnson's petition included the following questions:
1. Did the trial court's grant of Petitioner's Motion For Judgment of Acquittal (hereafter "MJOA") on the express basis of legally insufficient evidence preclude further proceedings under the Maryland common law of double jeopardy and/or the Federal Constitutional prohibition upon double jeopardy?

2. Was the trial court's grant of the MJOA procedurally proper because a trial court has the authority to reconsider and retract the grant of a mistrial?

(continued . . . )

1. Was the trial court's grant of the motion for judgment of acquittal procedurally proper because the court had the authority to reconsider and retract the grant of a mistrial because it retained the fundamental jurisdiction to render the ruling?

2. Did the trial court's grant of petitioner's motion for judgment of acquittal on the express basis of legally insufficient evidence preclude further proceedings under the Maryland common law of double jeopardy and/or the Federal Constitutional prohibition upon double jeopardy?

We shall hold that the trial judge did not have the authority to grant an acquittal, after he had declared a mistrial and discharged the jury, so that federal Constitutional and Maryland common law principles of double jeopardy are not implicated.

The saga in the present case began when Johnson was acquitted of murder in the first degree but convicted of murder in the second degree after a jury trial in February 2013 in the Circuit Court for Baltimore City. Johnson then filed a Motion for New Trial arguing various discovery violations under *Brady v. Maryland*, 373 U.S. 83 (1963),[3] as well as "prosecutorial vouching,"[4] and that the State had withheld evidence. The Circuit

---

( . . . continued)
3. Was the trial court's grant of the MJOA legally proper because the court retained fundamental jurisdiction to render the ruling?

4. Even assuming *arguendo* that the grant of the MJOA was procedurally flawed, under the Maryland common law of double jeopardy was an acquittal upon the express basis of legally insufficient evidence nevertheless final and binding?

[3] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court of the United States held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

[4] "Prosecutorial vouching" endangers a defendant's right to a fair trial and generally occurs where the State "places the prestige of the government behind a witness through personal assurances of the witness's veracity . . . or suggests that information not presented to the jury supports the witness's testimony." *Sivells v. State*, 196 Md. App. 254, 277 (2010) (quoting *Spain v. State*, 386 Md. 145, 153 (2005)).

Court Judge, who had presided over the trial, granted the motion for a new trial, and the second trial began in December of 2014.

Prior to the second trial, Johnson moved to redact recorded portions of his conversations captured in a wiretap of his cell phone in 2011 and in a recorded jail call in 2013. In the motion, Johnson requested that references to his first-degree murder charge, of which he had been acquitted, as well as any references to his attorney from the first trial, Russell Neverdon, be redacted from the recordings. A different circuit court judge presided over the second trial and, during trial, ruled that the redactions should occur.

Later during the proceedings, it appeared that redactions of a recording of a conversation with Johnson from Johnson's cell phone on October 19, 2011, had not occurred. In his call, Johnson referred to his former attorney, Russell Neverdon, as well as a call from "Tabbie" to Mr. Neverdon. In the same recorded conversation, there was still reference to the first-degree murder charge, which also was supposed to have been redacted by the State.

Johnson's counsel immediately moved for a mistrial:

[JOHNSON'S ATTORNEY]: Your Honor, may we stop the playing of it?
(Counsel and Defendant approached the bench, and the following occurred:)
[JOHNSON'S ATTORNEY]: Your Honor, objection and we would move for a mistrial. Clearly, the disk has not been redacted and it's starting to talk about first-degree and second-degree murder.
[THE STATE]: The transcript is redacted.
THE COURT: Yeah, give me a copy of the transcript.
(Pause.)
THE COURT: I mean, that was to -- oh, it's way back when.
[THE STATE]: Right.
THE COURT: I'm going to deny the motion at this time. Let's send the jury upstairs.

3

After a recess, the Circuit Court Judge asked that the State "address the issue" regarding the unredacted statements in the recordings, because he "ha[d]n't ruled yet" with respect to the mistrial:

> [THE STATE]: So what I would suggest is -- we have it paused just after where we stopped, I would suggest we just resume when the jury comes down, finish playing it, keep it moving. Obviously, it will have to be redacted before it goes back to the jury.
> THE COURT: Yeah. The Defense is -- why don't you address the issue, the Defense has requested a mistrial as a result.
> [THE STATE]: Oh, I apologize, Your Honor. You indicated you were -- I thought you indicated you were denying their motion.
> THE COURT: No, I haven't ruled yet.

After discussion about redactions having occurred in the transcript but not in the recordings, the judge ordered the recordings to be replayed. Upon hearing the recordings, the judge ordered the tapes to be "cleaned up again"[5] and instructed the jury to disregard

---

[5] The Circuit Court Judge ruled that he would instruct the jury to disregard the statements in question, rather than grant the mistrial:

> THE COURT: I don't think it rises to the level that a mistrial be warranted for any reason. First of all, as I started to say, there was a great deal of material, and I don't know that I -- it was more in the nature of an agreement that things would be removed as opposed to my ruling that they just could not be permitted to be testified -- and there was an agreement that -- the agreement as to Mr. Neverdon I don't know would have ever reached this, because the allegation with regard to even the little bit they heard, "Tabbie called Neverdon right on the spot. As soon as the police came in the door, she called and was on the phone with him," I don't know how that necessarily would have been privileged.
> [JOHNSON'S ATTORNEY]: I would proffer to the Court that the Court did specifically --
> THE COURT: I understand we --
> [JOHNSON'S ATTORNEY]: Oh, okay.
> THE COURT: -- talked about this, and it was agreed -- I understand there was an agreement; and, no, I did not specifically rule on each one segment, and this is her calling Neverdon. She may have had -- I mean, you know, she may well have

(continued . . . )

4

any reference to the warrant, which mentioned first-degree murder charges, as well as "any reference to actions taken by a person identified as 'Tabbie.'" The tapes of the wiretapped conversation on October 19, 2011, began, but again, problems arose.

Johnson objected to additional references to the first-degree murder charge in the tape. After reviewing the recording with counsel, the Circuit Court Judge announced, "I'm going to give [the jury] the same instruction, but we'll revisit this," and that he would "have the weekend to think about this." The jury was reconvened, and the trial continued.

---

( . . . continued)

called Neverdon. This is the report of somebody by Mr. Johnson saying that she called Neverdon. It doesn't say called for him, that I asked her to, that I directed her to, or anything of that nature, so even -- I don't know that this, if I had ruled on each one of these little paragraphs, but we -- it was agreed and essentially the State said it could remove all the references to Neverdon, and obviously it missed this one.
But I will instruct the -- I'm not sure exactly how to instruct the jury without highlighting it with regard to that, and I'll get back to that in a minute.

With regard to the comment about the charges, or with regard to the warrant in -- discussed on the tape, what, if anything, they heard, they should disregard with regard to the contents of what the warrant said, so that's about all I can do with regard to that.

I don't think the statement -- it's not that I was charged with, it's not that I'm going to trial for it -- it's none of those things that anybody was concerned about originally. It's just the mere mention of the charges. If he had said, you know, a number of other -- arson -- it doesn't really matter what the warrant said, but I will instruct them that they are to disregard anything the warrant said -- I know how to deal with it -- and anything they heard or they may have heard with regard to actions taken by Tabbie -- and it's not even Tabitha, it's Tabbie -- they are to disregard if they, in fact, heard any such thing.

But that's -- but the remainder of the tape will be played. It will be cleaned up again.

5

The State rested its case later that day, after which Johnson made a motion for judgment of acquittal. The Circuit Court Judge declared that he would consider the motion "first thing" on Monday morning: "I would prefer to put that issue off until Monday because . . . I've got this other issue to consider between now and then, too," referring to the motion for mistrial.

Immediately upon reassembling the next Monday, the Circuit Court Judge granted Johnson's motion for mistrial made the previous Friday and ordered that a new trial date be established:

> THE COURT: Good morning. In addition to any potential preliminary matters you all may have, we still have pending before the Court, a motion by the Defense for a mistrial.
>
> For the reasons, which I'll state in a moment, I'm going to grant that Motion for a Mistrial. The substance of the issue relates to the playing of certain information, which was -- by agreement and Court Order -- not to be heard by the jury.
>
> If there was one incident of such material, and it was addressed by the Court, and a motion for a mistrial was denied as to that -- but the second incident is somewhat different; in that, it's repetitive.
>
> If the Court believed that it was intentional or so grossly negligent on the part of the State, the ruling would be different than it is now.
>
> But because the Court had the opportunity to actually observe the reaction of the Assistant State's Attorneys conducting this trial, in realizing what was happening -- and clearly, I have never seen a look of shock on an attorney in my courtroom, more than I detected the look of shock on the faces of [the State] -- and for that reason I am going to grant the Motion for a Mistrial.
>
> What is now going to happen as a result of the mistrial, is that we will reconvene tomorrow morning, and we will pick a new trial date. So, I'll ask Counsel to be present tomorrow morning at 9:30 with their calendars.

In response, Johnson objected to the judge's characterization of the State's actions in bringing about the mistrial as unintentional and announced his opposition to retrial on double jeopardy grounds:

6

[JOHNSON'S ATTORNEY]: Your Honor, I've had an opportunity briefly to speak with Mr. Johnson. And I do want the record to reflect that obviously, Your Honor, has granted our request for a mistrial. But that we do not agree or accept the Court's factual findings regarding the State's position in this case. We do not accept that it was not an intentional act on their part.

It will be our position that a re-prosecution of Mr. Johnson in this case will be barred by double jeopardy, as a result of the State's actions. And I just wanted to make that clear on the record at this time.

There was no reference by anyone to Johnson's motion for judgment of acquittal made the previous Friday. The Circuit Court Judge discharged the jury, telling them "the case has been concluded -- at least in that case which you would be required to consider the evidence."

The next day, the Circuit Court Judge scheduled Johnson's retrial for March 9, 2015, after meeting with the parties.

On January 15, 2015, weeks after the case was rescheduled, Johnson filed a Motion to Dismiss Indictment on Grounds of Double Jeopardy, wherein he argued that his reprosecution was barred, because the State had intentionally provoked the mistrial, there was no manifest necessity at the time the mistrial was granted, and "the State's evidence was legally insufficient to sustain a conviction." A week later and almost a month after declaring the mistrial and discharging the jury, the Circuit Court Judge, on January 20, 2015, held a hearing on Johnson's motion to dismiss the case on double jeopardy grounds and referred to Johnson's suggestion that the State's evidence in the case was insufficient:

THE COURT: Good morning. Before the Court are motions of the defense essentially to dismiss the case on the basis of double jeopardy grounds. And also, as part of that same motion is an issue related to whether or not the Court did or

7

should address the issue of whether or not the evidence was sufficient at the close of Plaintiff's case which is where we were when the mistrial was granted.

In light of the fact that I've received the motion and it's in writing, I would suggest that I hear from the State and then I'll allow you to respond unless there's something additional you feel that should be added to your motion 'cause your motion's rather detailed.

The Circuit Court Judge solicited arguments from both parties on the "merits of the motion for judgment of acquittal" with respect to the sufficiency of the State's evidence.

After hearing arguments, the judge struck his previous grant of a mistrial and dismissed the second-degree murder charge against Johnson based on insufficiency of the evidence:

THE COURT: Good afternoon. We had a hearing this morning with regard to the - - the title of the motion was motion to dismiss indictment on grounds of double jeopardy.

For reasons that are more fully set forth in the order which I'll be filing, the Court is striking the granting of the mistrial and the Court will find that there is insufficient evidence as presented at the trial to convict Mr. Johnson and the charges are therefore dismissed.

An "Order Striking Motion for Mistrial and Granting Motion for Judgment of Acquittal" was entered the same day. In the Order, the judge responded to Johnson's arguments that the State had goaded him into making the Motion for Mistrial when he wrote, "[T]he Court is still unpersuaded that its observations were wrong," with respect to the State's lack of intent in playing the unredacted audio recordings, but also expressed that he was "troubled by the posture of the case because of the failure to rule upon the [motion for judgment of acquittal] which the record clearly demonstrate[d] the Court [had] stated it was to consider 'first thing.'" The Order manifested the Court's reconsideration of both the grant of the mistrial and his failure to rule upon the motion for judgment of acquittal:

8

[T]he Court will treat the Motion of the Defense as a motion to reconsider its rulings, both with regard to the subject matter of the [motion for judgment of acquittal] and the [motion for mistrial], and will strike the grant of the mistrial and consider the [motion for judgment of acquittal].

In his Order, the Judge granted the motion for judgment of acquittal after considering that the State's evidence was "unarguably circumstantial," with "no smoking gun" in the case:

> The case against the Defendant is unarguably circumstantial. With essentially no direct evidence, the State presented many intriguing issues that suggest the Defendant may have been involved in the disappearance and death of Ms. Barnes. . . .
>
> \*  \*  \*
>
> There was a tremendous amount of testimony from investigating officers of the Baltimore City Police Department, Maryland State Agencies and the Federal Bureau of Investigation. Among other things, their testimony included information as to sex-related websites the Defendant visited, and hundreds of text messages between the Defendant and the decedent as well as a sexually explicit video which included the decedent and the Defendant, which was found on the phones of Defendant and Ms. Barnes' sister as well.
>
> As conceded in argument by the State, there was "no smoking gun" in this case. Accordingly, the Court concludes there was insufficient evidence when taken as a whole, to establish the criminal culpability of Michael Johnson of second-degree murder. That being the conclusion of the court, the Motion for Judgment of Acquittal must be granted, there not being legally sufficient evidence to establish the guilt of the Defendant.

The State subsequently reindicted Johnson for second-degree murder. In response, in February of 2015, Johnson filed a Motion to Dismiss the Indictment, arguing that Johnson's acquittal barred further proceedings under double jeopardy. The trial judge dismissed the indictment following a hearing on the motion, orally expressing his belief that he had the authority to "correct a procedural misstep" by retracting the mistrial and granting the motion for judgment of acquittal:

> I don't disagree that there were procedural missteps, but the procedural misstep came in this case when I failed to do what I said I was going to do, which was to

9

address the Motion for Judgment of Acquittal first thing Monday morning and then failed to do what I had indicated I was going to do.

\* \* \*

I believe, I did believe at the time that I had the authority to correct a procedural misstep that I had made in a commitment that I had made to both the State and Defense to rule on the issue of the joint -- the Motion for Judgment of Acquittal, that I corrected that by striking the Motion for Mistrial and ruling as I did.

\* \* \*

. . . I thank you for indicating the difficulty that is presented when a judge is called upon to essentially judge his own prior determinations, but judges have to do that all the time, and in this case I believe that my ruling on the Judgment of Acquittal was correct at the time I ruled it, and I will grant the Motion to Dismiss the Indictment.

The State appealed to the Court of Special Appeals,[6] arguing, as it does before us, that the judge's declaration of a mistrial and discharge of the jury terminated the judge's authority over the case, which obviated the judge's ability to acquit Johnson. Johnson countered, as he does before us, that the trial judge had jurisdiction to grant his motion for judgment of acquittal and had broad discretion to reconsider his having granted the motion for mistrial.

In a published opinion, the Court of Special Appeals reversed the dismissal of Johnson's case, determining that the principles of double jeopardy did not bar Johnson's retrial, because the trial court could not acquit Johnson after declaring a mistrial and discharging the jury. *State v. Johnson*, 228 Md. App. 489 (2016).

---

[6] The State presented the following question on appeal to the Court of Special Appeals:
Did the circuit court err in granting Johnson's motion for judgment of acquittal twenty-nine days after terminating the case by declaring a mistrial and dismissing the jury; and, did the court subsequently err in granting Johnson's motion to dismiss on double jeopardy grounds?

In so doing, the intermediate appellate court concluded that the judge lacked the authority to do so after he had declared a mistrial and discharged the jury, explaining that, "the grant of a mistrial had the legal effect of declaring that the trial in the second prosecution had never taken place." *Id.* at 508. Once the mistrial was declared, according to the Court of Special Appeals, the judge could not "exercise fundamental jurisdiction over subject matter that no longer exists." *Id.* at 509. The Court also noted that the Circuit Court Judge could not reconsider the grant of the mistrial, in the absence of any statute or rule permitting the exercise of that kind of "revisory power." *Id.* at 511. Further, the Court of Special Appeals opined that if such power did exist, it could not be exercised after the jury is discharged, because "[a]fter the jury is discharged, there is no legal or practical way to place the parties in the same position as they held immediately prior to the declaration of a mistrial." *Id.*

The dissent penned by Judge Daniel Friedman, however, rejected the notion that the mistrial and discharge of the jury left the Circuit Court Judge without jurisdiction to later acquit Johnson. He iterated that a mistrial brings the parties back to a point earlier in the prosecution but does not deprive the trial court of the fundamental jurisdiction to render an acquittal. Judge Friedman noted that the grant of a motion for judgment of acquittal was "procedurally defective" under Rule 4-324, but iterated that an acquittal at any time prohibits an appeal by the State and a retrial. *Id.* at 514 (Friedman, J., dissenting).

The same dichotomy confronts us in our review: Is an acquittal, an acquittal, or did the trial judge's failure to adhere to the tenets of Rule 4-324, as well as his declaration

of a mistrial and discharge of the jury end his authority to grant Johnson's motion for judgment of acquittal?

Johnson primarily claims that the trial court never lost "fundamental jurisdiction" to grant his motion for judgment of acquittal after the judge had reconsidered and rescinded his grant of a mistrial. Johnson contends that an acquittal is an acquittal, no matter how erroneous it was or at what juncture it was entered and that the acquittal bars his retrial under both the Fifth Amendment and Maryland common law's prohibition against double jeopardy.

The State maintains that more than subject matter and personal jurisdictions were required to acquit Johnson. Rather, the State asserts that the grant of Johnson's motion for mistrial initiated the beginning of new proceedings in the case and that legal insufficiency in the prior proceedings was no longer on the table.

In Maryland, Rule 4-324 governs when a defendant may move for a judgment of acquittal during trial and the trial court's procedures in granting or dismissing a defendant's motion, as well as when a judge may acquit a defendant on her own motion[7]:

---

[7] Maryland Rule 4-324 references Article 23 of the Maryland Declaration of Rights which provides, in pertinent part, "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

It also references Section 6-104 of the Criminal Procedure Article of the Maryland Code (2001, 2008 Repl. Vol.), which states:

> (a) *Motion after State's evidence.* — (1) At the close of the evidence for the State, a defendant may move for judgment of acquittal on one or more counts or on one or more degrees of a crime, on the ground that the evidence is insufficient in law to sustain a conviction as to the count or degree.

(continued . . . )

12

**(a) Generally.** A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.

**(b) Action by the court.** If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall enter the judgment or direct the clerk to enter the judgment and to note that it has been entered by direction of the court. The court shall specify each count or degree of an offense to which the judgment of acquittal applies.

\* \* \*

**(c) Effect of denial.** A defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion.

The Rule does not provide that a trial judge can reserve her ruling on a motion for judgment of acquittal made before submission of the case to the jury, nor does it provide for a post-judgment motion for judgment of acquittal.

In contrast, Rule 29 of the Federal Rules of Criminal Procedure permits the trial judge to reserve ruling on a motion for judgment of acquittal made before submission of the case to a jury. The Federal Rule also allows a defendant to move for judgment of

---

( . . . continued)

  (2) Subject to paragraph (3) of this subsection, if the court denies the motion for judgment of acquittal, the defendant may offer evidence on the defendant's behalf without having reserved the right to do so.
  (3) If the defendant offers evidence after making a motion for judgment of acquittal, the motion is deemed withdrawn.
(b) *Motion after all evidence.* — (1) The defendant may move for judgment of acquittal at the close of all the evidence whether or not a motion for judgment of acquittal was made at the close of the evidence for the State.
  (2) If the court denies the motion for judgment of acquittal, the defendant may have review of the ruling on appeal.

13

acquittal within 14 days after a jury returns with a guilty verdict or after the jury is

discharged:

 (a) **Before Submission to the Jury**. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

(b) **Reserving Decision**. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

(c) **After Jury Verdict or Discharge.**

    **(1)** *Time for a Motion.* A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

    **(2)** *Ruling on the Motion.* If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

    **(3)** *No Prior Motion Required.* A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

(d) **Conditional Ruling on a Motion for a New Trial.**

    **(1)** *Motion for a New Trial.* If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination.

    **(2)** *Finality.* The court's order conditionally granting a motion for a new trial does not affect the finality of the judgment of acquittal.

    **(3)** *Appeal.*

        (A) *Grant of a Motion for a New Trial.* If the court conditionally grants a motion for a new trial and an appellate court later reverses the judgment of acquittal, the trial court must proceed with the new trial unless the appellate court orders otherwise.

        (B) *Denial of a Motion for a New Trial.* If the court conditionally denies a motion for a new trial, an appellee may assert that the denial

14

was erroneous. If the appellate court later reverses the judgment of acquittal, the trial court must proceed as the appellate court directs.

Many of our sister states, including Alaska, Colorado, Connecticut, Delaware, Hawaii, Idaho, Indiana, Iowa, Kansas, Maine, Massachusetts, Missouri, New York, Pennsylvania, Rhode Island, Tennessee, West Virginia, and Wyoming, in addition to the District of Columbia, have followed the federal example and specifically provide that a judge may reserve her ruling until after submission to the jury, as well as allow a defendant to file a motion for judgment of acquittal following submission of the case to the jury or its discharge within various time tables. Alaska R. Crim. P. 29; Colo. R. Crim. P. 29; Conn. Super. Ct. R. § 42–40; Del. Super. Ct. Crim. R. 29; Haw. R. Penal P. 29; Idaho Crim. R. 29; Ind. R. Tr. P. 50; Iowa R. Crim. P. 2.19(8) (only allowing for reservation of ruling); Kan. Stat. Ann. § 22-3419 (2007); Me. R. Unif. Crim. P. 29; Mass. R. Crim. P. 25; Mo. Supr. Ct. R. 27.07; N.Y. Crim. Proc. Law § 290.10 (Consol. 2012) (only allowing for reservation of ruling); Pa. R. Crim. P. 606; R.I. Super. Ct. R. Crim. P. 29 (only allowing for reservation of ruling); Tenn. R. Crim. P. 29; W. Va. R. Crim. P. 29; Wyo. R. Crim. P. 29; D.C. Super. Ct. R. Crim. P. 29.

The absence in our rule of permission for a trial judge to reserve ruling on a motion for judgment of acquittal was addressed in *State v. Sirbaugh*, 27 Md. App. 290 (1975), and *Malarkey v. State*, 188 Md. App. 126 (2009), in which the Court of Special Appeals rejected the trial court's ability to acquit. In *Sirbaugh*, Sirbaugh was charged with automobile manslaughter and other motor vehicle crimes. Sirbaugh's attorneys moved for a judgment of acquittal at the close of the evidence and the trial judge reserved

ruling on the motion, before submitting the case to the jury. The judge, thereafter, declared a mistrial due to a juror's illness, then granted the judgment of acquittal and dismissed the indictment. The State later reindicted Sirbaugh for manslaughter by automobile, and Sirbaugh moved to dismiss the indictment on double jeopardy grounds. The trial judge granted Sirbaugh's motion, and the State appealed.

On appeal, our intermediate appellate court determined that the trial judge could not reserve his ruling on the motion for judgment of acquittal. By attempting to do so, the trial judge had effectively denied the motion, because he had been required to either grant or deny the motion before he submitted the case to the jury pursuant to Maryland Rule 755,[8] the predecessor to the current Rule 4-324:

> [I]n a criminal jury case, the trial judge has two options: (1) grant a motion for judgment of acquittal, or (2) deny the motion and submit the case to the jury. He

---

[8] Maryland Rule 755 (1975) (repealed 1978) governed motions for judgment of acquittal and provided, in relevant part:

b. *When Made.*

A motion for judgment of acquittal on one or more counts, or one or more degrees of an offense, may be made by an accused at the close of the evidence offered by the State, or may be made at the close of all the evidence, whether or not such motion was made at the close of the evidence offered by the State. If the motion is not granted at the close of the evidence offered by the State, the accused may offer evidence without having reserved the right to do so, but by so doing, he withdraws his motion.

\*     \*     \*

c. *Action by Court.*

If the court on such motion or on its own motion determines that a judgment of acquittal should be granted, it shall direct the clerk to enter a judgment of acquittal on one or more counts, or one or more degrees of an offense which by law is divided into degrees, and to note that it has been entered by the direction of the court. If the case is tried before a jury it shall not be necessary for the jury by its foreman, or otherwise, to render a verdict.

16

has no authority to reserve his ruling on the motion for judgment of acquittal and at the same time submit the case to the jury. If he follows such a course, it is tantamount to denying the motion.

*Sirbaugh*, 27 Md. App. at 294. In language prescient to the present case, the Court of Special Appeals further reasoned that, practically speaking, the declaration of the mistrial and discharge of the jury had served to divest the trial judge's authority to take any action in the case:

> We think, however, the simple answer to the factual situation presented in this appeal is found in the action of the trial judge in declaring a mistrial and then endeavoring to make a ruling on the motion for judgment of acquittal, which ruling he had previously purported to reserve. It is clear that such action was a nullity since once he had declared a mistrial and dismissed the jury, he lost all authority to take any action in the case. The declaration of the mistrial and the dismissal of the jury ended the trial and ended the judge's participation therein. Thus, his purported ruling on the motion was completely ineffectual and meaningless.

*Id.*

In *Malarkey*, the Court of Special Appeals again had occasion to address whether the trial court could reserve ruling on the defendant's timely motion for judgment of acquittal prior to submission of the case to the jury. The judge had declared a mistrial after the jury was deadlocked. Months later, Malarkey filed a post-trial "Motion for Judgment of Acquittal," which the trial court denied. On appeal, our intermediate appellate court emphasized that Rule 4-324 did not authorize a judge to be able to reserve

his ruling on a motion for judgment of acquittal, as opposed to Rule 2-532 in the civil context[9] and Federal Rule 29:

---

[9] Maryland Rule 2-532, governing motions for judgment notwithstanding the verdict, provides:

(a) **When permitted.** In a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion.

(b) **Time for filing.** The motion shall be filed within ten days after entry of judgment on the verdict or, if no verdict is returned, within ten days after the discharge of the jury. If the court reserves ruling on a motion for judgment made at the close of all the evidence, that motion becomes a motion for judgment notwithstanding the verdict if the verdict is against the moving party or if no verdict is returned. A motion for judgment notwithstanding the verdict filed after the announcement or signing by the trial court of a judgment or the return of a verdict but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

\* \* \*

(c) **Joinder with motion for new trial.** A motion for judgment notwithstanding the verdict may be joined with a motion for a new trial.

(d) **Effect of failure to make motion.** Failure to move for a judgment notwithstanding the verdict under this Rule does not affect a party's right upon appeal to assign as error the denial of that party's motion for judgment.

(e) **Disposition.** If a verdict has been returned, the court may deny the motion, or it may grant the motion, set aside any judgment entered on the verdict, and direct the entry of a new judgment. If a verdict has not been returned, the court may grant the motion and direct the entry of judgment or order a new trial. If a party's motion for judgment notwithstanding the verdict is granted, the court at the same time shall decide whether to grant that party's motion for new trial, if any, should the judgment thereafter be reversed on appeal.

(f) **Effect of reversal on appeal.** (1) When judgment notwithstanding the verdict granted. If a motion for judgment notwithstanding the verdict is granted and the appellate court reverses, it may (A) enter judgment on the original verdict, (B) remand the case for a new trial in accordance with a conditional order of the trial court, or (C) itself order a new trial. If the trial court has conditionally denied a motion for new trial, the appellee may assert error in that denial and, if the judgment notwithstanding the verdict is reversed, subsequent proceedings shall be in accordance with the order of the appellate court.

(continued . . . )

By its terms, Md. Rule 4-324 does not authorize a court to reserve its ruling on a motion for judgment of acquittal, in contrast to the civil context. *See* Rule 2-532. The Court of Appeals and the General Assembly are obviously aware of F. R. Crim. P. 29. Neither has seen fit to conform Rule 4-324 to F. R. Crim. P. 29.

*Malarkey*, 188 Md. App. at 160. Like in *Sirbaugh*, the Court of Special Appeals determined that the trial judge's reservation of a ruling on the motion for judgment of acquittal "was tantamount to a denial of the motions for acquittal when the court submitted the case to the jury." *Id.* at 162.

The implications of a trial court's acquittal of a defendant outside of the confines of the governing rule have also been addressed by the Supreme Court in *Carlisle v. United States*, 517 U.S. 416 (1996), in which the Court affirmed the Sixth Circuit Court of Appeals' reversal of the grant of an untimely post-verdict motion for judgment of acquittal outside of the purview of Federal Rule 29. The Supreme Court observed that the text of Federal Rule 29 was clear and unambiguous, and it did not permit the trial judge to grant an untimely post-verdict motion for judgment of acquittal, nor did the Rule provide that the judge could render an acquittal, after the verdict, on his own motion. The Court further rejected the notion that the trial court had the inherent power to "circumvent

---

( . . . continued)

> (2) When judgment notwithstanding the verdict denied. If a motion for judgment notwithstanding the verdict has been denied and the appellate court reverses, it may (A) enter judgment as if the motion had been granted or (B) itself order a new trial. If the motion for judgment notwithstanding the verdict has been denied, the prevailing party may, as appellee, assert grounds entitling that party to a new trial in the event the appellate court concludes that the trial court erred in denying the motion. If the appellate court reverses the judgment, nothing in this Rule precludes it from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial should be granted.

or conflict" with the Rules in order to enter the acquittal, *id.* at 426; the Court noted that such an interpretation "would create an odd system in which defense counsel could move for judgment of acquittal for only seven days after the jury's discharge, but the court's power to enter such a judgment would linger." *Id.* at 422. The majority concluded that the provisions of the Rule were determinative of when the trial court's power to acquit came to an end:

> The dissent makes the sweeping assertion that "a district court clearly has the inherent authority to ensure that a legally innocent defendant is not wrongfully convicted," *post*, at 442. Perhaps so. As the dissent itself recognizes, however, that power has come to an end once an appeal has been taken. *Post*, at 452–453. We are in accord, then, that there is *some* point at which the district court is rendered powerless to enter a judgment of acquittal, and the disagreement between us and the dissent comes down to nothing more cosmic than the question of timing— which we find answered by the text of Rule 29.

*Id.* at 430–31.

Thus, the reasoned judgment is that when the trial judge acted outside of the strictures of Rule 4-324 in the instant case, he acted without authority. As the Supreme Court opined in *Carlisle*, the trial judge was "rendered powerless to enter a judgment of acquittal." *Id.* at 430.

Johnson argues, however, and the dissent in the Court of Special Appeals asserted, that an acquittal entered by a judge at any time, even though procedurally defective, engages double jeopardy protections. Johnson's counsel urged before us that a judge could enter an acquittal in a case *sua sponte* at any time after conviction, until the State would suffer prejudice. The following colloquy took place at oral argument:

> THE COURT: The jury was discharged. Under our facts, there's a subsequent motion filed.

20

JOHNSON'S ATTORNEY: Could he do it *sua sponte*?

THE COURT: Could he have done it?

JOHNSON'S ATTORNEY: Absolutely. Sure.

THE COURT: How long does that jurisdiction last forward in time?

JOHNSON'S ATTORNEY: Once again, it's a question with multiple answers, and I ask the Court's indulgence to answer it in a couple of different ways. First, the granting of the acquittal, in order to fend off what the judge views as an evident miscarriage of justice, can be done up until—now again, case law says mistiming doesn't affect an acquittal, and we would certainly rest with that—but we would say that it would last up until there was evident prejudice to the State. And the reason for that is that delay in the law takes on meaning only to the extent that it is prejudicial to a party. This Court has said that in various contexts, the Constitution's speedy trial context, the preindictment delay context, the doctrine of laches. In many contexts, a party says delay, delay, delay. That's our position. Well, delay only takes on meaning if it's prejudicial. It would be our view that whether *sua sponte* or in response to a request from a party, a judge's delay in making a ruling of that sort is not a problem so long as there has not been irremediable prejudice to the other party, in which case, honestly there would be a party. In the present case –

THE COURT: Mr. Braudes, would that include after sentencing?

JOHNSON'S ATTORNEY: That, of course, is not this case, Your Honor.

THE COURT: I know. But when you're talking about the issue of how long in criminal cases, it could be sentencing, after appeals, after a person's been, say, imprisoned, or whatever.

JOHNSON'S ATTORNEY: If a judge, on reflection, on the basis of subsequent case law, on the basis of conscience, decides the evidence was legally insufficient to support the conviction of this individual, there has been a miscarriage of justice. . . . In fairness, the judge should conduct a hearing on that. But does the judge retain jurisdiction to do it? Yes, absolutely. Again, absent prejudice to the State, which has not even been suggested in this case.

Although Johnson's counsel's reasoning is open to question, he grounds it in double jeopardy principles.

With respect to double jeopardy, this Court in *Kendall v. State*, 429 Md. 476, 484–86 (2012), recently expounded on its jurisprudence under the federal Constitution and Maryland common law:

The federal Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." United States

21

Constitution, Fifth Amendment.[] That protection is also a fundamental part of Maryland common law. *See State v. Taylor*, 371 Md. 617, 629–30, 810 A.2d 964 (2002). In a nonjury trial, jeopardy ordinarily attaches when the first witness is sworn, *Crist v. Bretz*, 437 U.S. 28, 37 n.15, 98 S. Ct. 2156, 57 L.Ed.2d 24 (1978), although in some circumstances it may attach without the appearance of a witness if the defendant is "subjected to the risk of conviction." *Daff v. State*, 317 Md. 678, 688–89, 566 A.2d 120 (1989) (acquittal following failure of prosecution witnesses to appear for trial). For each offense for which the defendant is thereafter acquitted, both the federal Constitution and State common law prohibit a second prosecution. *See Benton v. Maryland*, 395 U.S. 784, 796, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969) (federal Constitution); *Gianiny v. State*, 320 Md. 337, 342, 577 A.2d 795 (1990) (Maryland common law). "If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair," even if the acquittal was based on an "egregiously erroneous foundation." *United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S. Ct. 426, 66 L.Ed.2d 328 (1980); *see also Fong Foo v. United States*, 369 U.S. 141, 82 S. Ct. 671, 7 L.Ed.2d 629 (1962).[] Nor are double jeopardy protections vulnerable to judicial second thoughts. "[O]nce the trier of fact in a criminal case, whether it be the jury or the judge, intentionally renders a verdict of not guilty, the verdict is final and the defendant cannot later be retried on or found guilty of the same charge." *Pugh v. State*, 271 Md. 701, 706, 319 A.2d 542 (1974) (even though trial judge changed mind after initially finding evidence insufficient on drug charge, further prosecution of defendant on that charge was barred); *Brooks v. State*, 299 Md. 146, 153–54, 472 A.2d 981 (1984) (trial judge could not "reconsider" and submit conspiracy charge to jury after first ruling that evidence was insufficient to establish that offense).

It is also well established that, if a defendant seeks to have a prosecution terminated without any submission to a judge or jury as to the defendant's guilt or innocence of the charges and the court grants that motion, further prosecution is not barred. The critical question is "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L.Ed.2d 642 (1977) (Brennan, J.).

(Footnotes omitted).

Johnson urges that this Court's decision in *State v. Taylor*, 371 Md. 617 (2002), in casting aside procedural improprieties and affirming the acquittals of the defendants entered by the trial courts outside of the strictures of Rule 4-324, supports his analyses.

In *Taylor*, we consolidated the appeals in two cases in which the trial courts had pretrial motions to dismiss and in which the charges had been augmented by stipulations of facts outside the record. The primary issue was whether the charges could be resurrected or whether double jeopardy protections banned reprosecution.

We determined that while both trial judges, in cases pending before them, had erred by exceeding the permissible scope of motions to dismiss by considering the sufficiency of the evidence, the dismissals had "substantively constituted judgments of acquittal and therefore must be given effect as such for jeopardy purposes." *Id.* at 644. Without discussing any of the strictures of Rule 4-324, we observed that, although the trial judges had erred, their decisions had implicated double jeopardy; the courts' dismissals were not nullified by the error: "'[J]urisdiction' for double jeopardy analysis means jurisdiction in a most basic sense. Merely because there was an error in the exercise of jurisdiction did not mean that the court proceedings were a nullity." *Id.* at 650 (citing *Block v. State*, 286 Md. 266, 270 (1979)). Jurisdiction in a most basic sense, as referenced in *Taylor*, according to Judge Friedman in his dissent in the instant case is "subject matter jurisdiction over the crime and personal jurisdiction over the defendant," which creates the context for even a procedurally defective acquittal to "create[] a double jeopardy bar to repeat prosecution." *Johnson*, 228 Md. App. at 514 (Friedman, J., dissenting); *see also Pulley v. State*, 287 Md. 406 (1980); *Lewis v. State*, 229 Md. App. 86 (2016).

In relying on *Taylor*, however, as well as other cases in which acquittals were entered during the pendency of judicial proceedings, such as *Block*, 286 Md. at 266, *Daff*

23

*v. State*, 317 Md. 678 (1989), *Parojinog v. State*, 282 Md. 256 (1978), and *Evans v. Michigan*, __ U.S. __, 133 S. Ct. 1069 (2013), Johnson misses the mark, because only when the court has the authority to act does an acquittal implicate double jeopardy. In the present case, the judge was without authority to acquit after he failed to adhere to Rule 4-324, as well as after having declared a mistrial and discharged the jury.

Persuasive with respect to the judge's lack of authority to acquit when he violated the governing rule is the opinion of the United States Court of Appeals for the Sixth Circuit in *United States v. Davis*, 992 F.2d 635 (6th Cir. 1993). In *Davis*, the Sixth Circuit Court of Appeals rejected the notion that the grant of an acquittal outside the purview of Federal Rule 29 was merely a procedural irregularity, even though the district court judge clearly had subject matter jurisdiction and personal jurisdiction.

In reviewing the grant of an acquittal in *Davis*, the Sixth Circuit Court of Appeals reversed the judgment of acquittal entered by a district court judge outside of the scope of Federal Rule 29. In so doing, the Court expressly rejected not only the ability of the judge to grant an acquittal on his own motion in a situation outside the contemplation of Rule 29 but also that the judge had the inherent power to do so:

> As in *Smith*, it is argued here that because the literal language of the rule limits the time for making a post-verdict motion, the rule does not limit the power of the district court to act on its own motion. Acceptance of this position would indefinitely extend the power of the district courts to act, a result soundly rejected by the Court in *Smith* and *Robinson*. While the double jeopardy concerns present in *Smith* do not exist in this case, the other reasons advanced by the Court for its strict construction of Rules 33 and 45 apply equally here: the Court's reluctance to construe Rule 33 in a way that would deprive the district court of the power to act on a motion made by "the person most concerned," yet permit action by the court on its own initiative; the need to avoid subjecting judges to continuing private appeals regarding convictions; the availability of post-conviction relief to address

24

the risk of miscarriage of justice; and the need to avoid the uncertainty and confusion that would necessarily result from delayed decisions.

*Id.* at 640.

The Sixth Circuit rejected the notion that a federal district court judge has the authority to act outside the purview of the Federal Rules. In so doing, the court relied on the tenets of *United States v. Smith*, 331 U.S. 469 (1947), in which the Supreme Court also rejected the authority of the district court judge to act outside the confines of the Federal Rules in granting a new trial, even where double jeopardy concerns could be implicated. In *Smith*, the Supreme Court vacated the *sua sponte* grant of a new trial, outside the strictures of Rule 33 of the Federal Rules of Criminal Procedure[10] and opined about the consequences that would result in determining that judges have "continuing power" to act outside the boundaries of the Federal Rules when the time within which to act had terminated:

> [W]e would be reluctant to hold that the court has a continuing power on his own initiative to grant what the defendant has not the right to go into open court and ask. To approve the practice followed in this case would almost certainly subject trial judges to private appeals or application by counsel or friends of one

---

[10] As *United States v. Smith*, 331 U.S. 469, 472 (1947), noted, Rule 33 of the Federal Rules of Criminal Procedure then provided:

> NEW TRIAL. The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 5 days after verdict or finding of guilty or within such further time as the court may fix during the 5-day period.

25

convicted. We think that expiration of the time within which relief can openly be asked of the judge, terminates the time within which it can properly be granted on the court's own initiative. . . .

* * *

. . . The trial judge is given power by the Rules to entertain motions for new trial within five days after verdict and may extend that time for so long as he thinks necessary for proper consideration of the course of the trial. But extension of that time indefinitely is no insurance of justice. On the contrary, as time passes, the peculiar ability which the trial judge has to pass on the fairness of the trial is dissipated as the incidents and nuances of the trial leave his mind to give way to immediate business. It is in the interest of justice that a decision on the propriety of a trial be reached as soon after it has ended as is possible, and that decision be not deferred until the trial's story has taken on the uncertainty and dimness of things long past.

*Id.* at 475–76. In shunning assertions prophetic of Johnson's argument before us in the present case, the Justices considered the implications of double jeopardy:

A majority of the Court of Appeals thought it a shocking suggestion that on mature reflection a District Judge may not correct an injustice because his first reaction was different. We doubt if many cases will occur in which very shocking injustices will survive after the trial court denies a motion based on detailed recital of grounds for new trial and a Court of Appeals affirms. This possibility seems too remote to induce us to hold that a trial court's denial of a new trial, affirmed on appeal, has no finality and that a trial judge may, even after service of a sentence has begun, set the whole proceedings aside and start over—if indeed a new start would not also be forbidden.

*Id.* at 476; *see also McGraw v. State*, 688 So.2d 764 (Miss. 1997) (determining that the acquittal did not bar retrial under double jeopardy principles because the motion for reconsideration of the denial of a directed verdict was not filed within ten days of the judgment as provided for in the governing rule).

Acting outside the applicable Federal Rules, then, divested the trial judges in *Davis* and *Smith* of the authority to act. The same holds true in the present case, because

26

the trial judge acted outside of Rule 4-324, which is not a mere procedural irregularity but a dispossession of authority.

Insofar as *Taylor* and the other cases upon which Johnson relies, Rule 4-324 was not in play, the matter in issue was still pending, and various rules, statutes, and precedent permitted the judge's actions. *See Taylor*, 371 Md. at 644–48 (determining that an acquittal on the merits erroneously rendered as a motion to dismiss under Maryland Rule 4-252 implicated double jeopardy principles); *Daff*, 317 Md. at 689–90 (barring retrial under double jeopardy principles when the judge acquitted after the State failed to present evidence, because prior jurisprudence dictated that after the case was called, jeopardy attached); *Parojinog*, 282 Md. at 262, 265 (explaining that under the statutory scheme, the juvenile court judge was required to consider waiver issue first and failed to do so prior to adjudication of guilt, implicating double jeopardy); *Evans*, 133 S. Ct. at 1075 (holding that Evans was acquitted in reliance on a Michigan rule of criminal procedure, albeit in error).

The only case cited by Johnson that gives us pause in our analytical framework with respect to the effect of a judge acting outside of the scope of her authority in relation to an applicable rule is *Block*, 286 Md. at 266, in which we reversed a determination that double jeopardy did not bar a second prosecution. In *Block*, the district court had rendered a guilty verdict but postponed sentencing. Before sentencing, Block had moved for reconsideration at which time the trial court had reconsidered and changed the verdict

to not guilty, in derogation of Maryland District Rule 770[11] which only permitted the judge to grant a new trial. We applied double jeopardy principles and barred the second prosecution.

We pause only momentarily but soldier on in our analysis for two reasons: first, our decision in the recent case of *Kendall*, 429 Md. at 487–93, did not reach the same result as in *Block*, although the district court judge in *Kendall* also had erred in entering a not guilty verdict.

Secondly, the procedural posture of *Block* is readily distinguishable from the instant case, because the trial judge here lost his authority to acquit Johnson once he declared the mistrial and discharged the jury, as the Court of Special Appeals opined.

When a mistrial is granted upon a defendant's motion, reprosecution is ordinarily not prohibited, in the absence of prosecutorial misconduct or judicial "overreaching," as the Supreme Court in *United States v. Jorn*, 400 U.S. 470, 485 (1971) (plurality opinion), stated:

---

[11] As *Block v. State*, 286 Md. 266, 269 (1979), stated, Maryland District Rule 770 provided, in pertinent part:
   a. *Motion of Defendant.*
   Upon motion of the defendant filed within three days after a verdict the court, in the interest of justice, may order a new trial.
   *       *       *
   c. *Revisory Power of Court.*
   For a period of 90 days after the imposition of a sentence, if no appeal has been perfected, or thereafter, pursuant to a motion filed within that period, the court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial. After the expiration of that period, the court has revisory power and control over the judgment only in case of fraud, mistake or irregularity.

> If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.

*See also United States v. Scott*, 437 U.S. 82, 93 (1978).

In the present case, the judge expressly found that prosecutorial misconduct had not occurred, a finding about which clear error has not been alleged nor shown.

Once the judge granted the mistrial in the present case, he *terminated* the proceedings in Johnson's favor, "before any determination of factual guilt or innocence." *Scott*, 437 U.S. at 94. We have explored the implications of the termination of proceedings by a mistrial in *Harrod v. State*, 423 Md. 24 (2011), in which we explored the State's obligation to timely pretrial notice of a chemist's report to the defendant before a retrial, after a mistrial in the first trial had been declared. We declared "black letter" law with respect to the ability to retry the defendant as well as the implications for the parties on retrial, who are restored to their original positions, as though the first trial had not occurred:

> It is well-established in our jurisprudence that the grant of a mistrial upon a defendant's request or consent does not preclude a retrial. *Bell v. State*, 286 Md. 193, 202, 406 A.2d 909, 913 (1979). We have noted, in *dicta*, that the grant of a mistrial is "tantamount to a holding that there had been no trial at all," which does not "deny either the accused or the State the opportunity to litigate directly their rights on retrial." *Cook v. State*, 281 Md. 665, 670–671, 381 A.2d 671, 674 (1978); *see also Powers v. State*, 285 Md. 269, 285, 401 A.2d 1031, 1040 (1979) ("a mistrial is equivalent to no trial at all"). Similarly, of the grant of a new trial, we have suggested, at least in the usual context, that the effect "is to leave the cause in the same condition as if no previous trial had been held." *Cottman v. State*, 395

29

Md. 729, 743, 912 A.2d 620, 628 (2006), quoting *Snyder v. Cearfoss*, 186 Md. 360, 367, 46 A.2d 607, 610 (1946); *see also State Use of Scruggs v. Baltimore Transit Co.*, 177 Md. 451, 454, 9 A.2d 753, 754 (1939) ( "[T]he beneficial procedural incidence of the order is to reestablish the equality in law of the parties, which was lost, by restoring them to the position of the litigants at the beginning of the trial before a jury."); *Hammersla v. State*, 184 Md. App. 295, 313, 965 A.2d 912, 923 (2009) (concluding that the grant of a new trial "wiped the slate clean," and revived the State's obligation to provide notice of its intent to seek an enhanced penalty prior to sentencing), *cert. denied*, 409 Md. 49, 972 A.2d 862 (2009).

*Id.* at 35. In *Harrod*, in reaching our conclusion that the State was obligated to provide the defendant notice of the chemist report, we were clear that "it is not a leap of faith to acknowledge that the grant of a mistrial in a criminal case does create a 'tabula rasa'" which "requires the litigants to observe pretrial procedures once again." *Id.*

The closing bell, thus, rang when the trial judge in the present case granted the mistrial. Johnson asserts, however, that other state courts have permitted the revocation of the grant of a mistrial, which reflects that a trial judge continues to have the authority to act in a case after the declaration of a mistrial. Johnson does not cite to any Maryland authority, nor have we found any, for the proposition that the judge can revoke the grant of a mistrial, although it is clear that other jurisdictions have entertained the trial court's ability to revoke the grant of a mistrial. In *Rodriguez v. State*, 852 S.W.2d 516, 520 (Tex. Crim. App. 1993) (en banc), the Texas Court of Criminal Appeals determined that the "trial court retained its authority to withdraw its order of mistrial" because the jury had not been discharged nor even advised of the mistrial; in *People v. Dawkins*, 624 N.E.2d 162, 164 (N.Y. 1993), New York's supreme court determined that the trial court had

30

authority to revoke the grant of a mistrial based upon jury deadlock before the jury had been discharged.[12]

Assuming, without deciding, that this Court would adopt the same reasoning regarding the judge's authority to rescind her grant of a mistrial before the jury was discharged, it is a simple truth that in the present case the jury had been discharged weeks before the judge revoked his grant of a mistrial, which distinguishes this case from those cited by Johnson.

The import of discharging the jury has been explored in *Jones v. State*, 173 Md. App. 430 (2007), in which the trial court had failed to poll or hearken the jury before the jurors had been discharged but had recalled the jurors and polled and hearkened them to the guilty verdict weeks later. The Court of Special Appeals demurred to this practice and stated, "Once a jury is dispersed, and beyond the presence of the court, it cannot later be reconstituted." *Id.* at 459. The Seventh Circuit Court of Appeals has gone further in elucidating the effect of a mistrial after a jury has been discharged and dispersed, in *Camden v. Circuit Court of Second Judicial Circuit*, 892 F.2d 610, 616 n.7 (7th Cir. 1989), in which it stated, "While the mistrial declaration alone was not a talismanic utterance, the discharge and dispersal of the jury rendered the mistrial a *fait accompli*. Once the jury is discharged and has dispersed, a trial court is unable to reconsider its intention to declare a mistrial."

---

[12] Johnson cites also *People v. McGee*, 636 N.W.2d 531 (Mich. Ct. App. 2001), but that judgment was vacated and the case remanded for a new trial by the Supreme Court of Michigan in *People v. McGee*, 670 N.W.2d 665 (Mich. 2003).

We do, moreover, find persuasive the discussion in *State v. Meyer*, 953 S.W.2d 822 (Tex. App.—Corpus Christi 1997), of the effect of a mistrial and discharge of the jury when a trial judge, six months later, acquitted the defendant based on his previously filed motion. In *Meyer*, the Texas court acknowledged that the trial judge had continued to have subject matter jurisdiction and personal jurisdiction after he declared a mistrial but declared that the judge acted without authority, thereby exceeding "the boundaries of judicial propriety." *Id.* at 825. The court specifically determined:

> [W]e hold that withdrawing the mistrial order was not a viable option for the trial court.
>
> A court's authority to act is limited to those actions authorized by constitution, statute, or common law. *State v. Johnson*, 821 S.W.2d 609, 613 (Tex. Crim. App. 1991). In determining the nature of the trial court's actions, we look to the effect rather than the label applied to the matter by the court or parties. *State v. Evans*, 843 S.W.2d 576, 577 (Tex. Crim. App. 1992). We conclude that the trial court's judgment is actually the dismissal of a prosecution.
>
> Generally, a trial court has no authority to dismiss a case unless so requested by the prosecutor. *Johnson*, 821 S.W.2d at 613. There are, however, certain exceptions to that rule. A criminal case can be dismissed without the State's consent when (1) a speedy trial has been denied, (2) the charging instrument is defective, or (3) article 32.01 of the Code of Criminal Procedure has been violated. *Id.* at 612 n.2. However, none of the exceptions apply in this case.
>
> Having concluded that the trial court's judgment is actually the dismissal of a prosecution, we hold that the State is entitled to appeal under Code of Criminal Procedure article 44.01(a). We hold that the trial court did not have the authority to dismiss the prosecution in this case.

*Id.*

The trial judge in the present case, thus, acted without authority in acquitting Johnson, in contravention of Rule 4-324 and weeks after he had declared a mistrial and discharged the jury. The acquittal was granted, thus, not in the context of a mere

32

procedural irregularity but in the circumstance in which the judge was totally without authority to act. As a result, the federal Constitution and Maryland common law double jeopardy principles are not implicated, and Johnson may be retried.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**